**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

OSEI A. HARPER,
613 E. 9th Avenue
Havana, Florida 32333,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE NAVY;
HUNG CAO, in his official capacity as Acting Secretary of the Navy,

Defendants.

Civil Action No. 4:26-cv-00395-AW-MAF

(Administrative Procedure Act Review)

No Jury Demand — Review on the Administrative Record

---

## PLAINTIFF'S EXHIBIT INDEX TO THE FIRST AMENDED COMPLAINT

The exhibits attached to the First Amended Complaint are listed below. Review of the challenged decision is confined to the administrative record. Exhibits offered solely on the question of record completeness are so identified; they are not offered to enlarge the administrative record before BCNR or to establish matters the Board considered.

1. BCNR Dispositive Decision, Docket No. 8252-25 (NR20250008252), signed February 26, 2026 — the final agency action under review.
2. DD Form 214, Certificate of Release or Discharge from Active Duty (September 21, 1992) — government-issued record (redacted per Fed. R. Civ. P. 5.2).
3. Advisory Opinion (signed January 1, 2026), as transmitted by the Board's January 6, 2026 email, together with Plaintiff's rebuttal to the Advisory Opinion (January 9, 2026).
4. Transmittal Ledger — Plaintiff's transmissions to the Department of the Navy and the Board for Correction of Naval Records; documents what was transmitted and the individually preserved delivery/read status for each transmission. Offered on record completeness.

5. Comparative Record Matrix.v2 — a post-decision inventory of documentary discontinuities among the surviving historical records, Plaintiff's preserved copies, and government productions. Offered on record completeness; not before the Board.

6. Restriction Order and Schedule (May 4, 1992) — a government-originated command instrument surviving only in Plaintiff's personal archive and absent from the government's productions. Offered on record completeness; not before the Board.

7. Voluntary Statement, OPNAV 5527/2 (August 28, 1992) — Plaintiff's contemporaneous statement documenting both the routine loss of paperwork and the mistreatment then alleged.

8. Performance Evaluations of January 31, 1992 and May 4, 1992 — the contemporaneous evaluations reflecting the reversal from a retention recommendation to an adverse evaluation.

9. Command Counseling and Warning Entry, NAVPERS 1070/613 (November 29, 1991) — the earliest entry in Plaintiff's record; retains Plaintiff in service, cites a single timeliness deficiency, and advises of Other-Than-Honorable separation consequences; authored by the command's Legal Officer. Before the Board (Social Security number redacted per Fed. R. Civ. P. 5.2).

10. Declaration of Plaintiff under 28 U.S.C. § 1746 — authentication and completeness of the attached exhibits; the post-service record. Prepared for this litigation and identified as such.

**Materials before the Board, contained in the administrative record to be lodged (referenced in the record, not attached):**

The administrative discharge board packet; the contemporaneous medical records, including the May 18, 1992 clinical note and the dependency-screening documentation; and the 1992 character witness statements. Each was before the Board and therefore should be reflected in the certified administrative record. Plaintiff references these materials in the record rather than attaching them.

Dated: August 20th, 2026

Osei A. Harper
Plaintiff, pro se

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 1

## BCNR DISPOSITIVE DECISION

Docket No. 8252-25 (NR20250008252) — signed February 26, 2026

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
701 S. COURTHOUSE RD
ARLINGTON, VA 22204

JHW
Docket No. 8252-25
Ref: Signature Date

[redacted]

Dear Petitioner:

This is in reference to your application for correction of your naval record pursuant to Section 1552 of Title 10, United States Code. After careful and conscientious consideration of relevant portions of your naval record and your application, the Board for Correction of Naval Records (Board) found the evidence submitted insufficient to establish the existence of probable material error or injustice. Consequently, your application has been denied.

Although your application was not filed in a timely manner, the Board found it in the interest of justice to waive the statute of limitations and consider your case on its merits. A three-member panel of the Board, sitting in executive session, considered your application on 10 February 2026. The names and votes of the panel members will be furnished upon request. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of the Board. Documentary material considered by the Board consisted of your application together with all material submitted in support thereof, relevant portions of your naval record, applicable statutes, regulations, and policies, to include the 25 August 2017 guidance from the Office of the Under Secretary of Defense for Personnel and Readiness (Kurta Memo), the 3 September 2014 guidance from the Secretary of Defense regarding discharge upgrade requests by Veterans claiming post-traumatic stress disorder (PTSD)/mental health condition (MHC) (Hagel Memo), and the 25 July 2018 guidance from the Under Secretary of Defense for Personnel and Readiness regarding equity, injustice, or clemency determinations (Wilkie Memo). In addition, the Board considered an advisory opinion (AO) from a qualified mental health professional and your response to the AO.

The Board determined that your personal appearance, with or without counsel, would not materially add to their understanding of the issues involved. Therefore, the Board determined that a personal appearance was not necessary and considered your case based on the evidence of record.

The following is the relevant factual background of your case based upon review of your naval record and/or the matters provided with your application:

1. You enlisted in the U.S. Navy and began a period of active duty on 11 December 1990.

2. On 29 November 1991, you were issued a counseling warning for your inability to meet requirement for duties on time. It was recommended for corrective action that you stop assuming, review and learn squadron doctrines, rules, regulations, ask more questions when in doubt regardless of any derogatory remarks you may receive, and keep up on medical health and see the doctor when necessary. You were advised further deficiencies in your performance and or conduct may result in disciplinary action and in processing for administrative discharge.

3. On 8 January 1992, you received non-judicial punishment (NJP) for two specifications unauthorized absence (UA) for failure to go to your appointed place of duty and being absent from your place of duty, and for disobeying a lawful order to be in your room for re-inspection. All of your punishment was suspended for six months.

4. On 22 April 1992, you were again counseled on military behavior, unauthorized absence, and your military responsibilities after reporting late for work on several occasions. You were counseled to obtain an alarm clock and leave for work in time to allow for unforeseen delays.

5. On 4 May 1992, the suspension of your reduction in rate from your prior NJP punishment was vacated due to your continued misconduct. That same day, you received NJP for six additional specifications of failing to go to your appointed place of duty and two specifications of disobeying a lawful order.

6. On 18 May 1992, you were referred to mental health after ingesting over the counter medication in an attempt not to report to the ship. You were diagnosed an adjustment disorder, alcohol abuse, and a personality disorder with narcissistic and antisocial traits.

7. On 20 May 1992, you received a third NJP for two days unauthorized absence (UA) and missing ship's movement.

8. Consequently, you were notified of administrative separation processing for misconduct pattern of misconduct and commission of a serious offense. You consulted with legal counsel and elected an administrative discharge board (ADB).

9. On 5 July 1992, you were seen at a civilian hospital after you struck a parked car while riding a bicycle after drinking large amounts of beer. You received x-rays and were diagnosed with abdominal pain, orthopedic pain, and tenderness without any fractures.

10. On 25 July 1982, the ADB determined that you committed misconduct recommended you be discharge with an Other than Honorable (OTH) characterization of service. At the ADB, you were represented by a qualified lawyer, were able to question witnesses, and presented evidence in support of your case, including your testimony. The ADB report contains a summary of your chain of command's testimony regarding their efforts to correct your conduct and performance issues. Each testified that their efforts were unsuccessful despite many attempts to assist you through your alcohol and personal issues. Your Branch Officer further testified that he found you unreliable after you attempted to use a family illness as an excuse to over-extend your emergency leave. All your supervisors testified that you had no potential for further service.

11. Your Commanding Officer (CO) concurred with the ADB's recommendation and made the following remarks in his endorsement to the separation authority (SA):

> "...[Petitioner's] performance and actions have been prejudicial to the good order and discipline of my command and the United States Navy. He is irresponsible, unmotivated, and unwilling to conform to Navy orders and regulations. While it is apparent that [Petitioner] has difficulty in dealing with alcohol, he has been provided ample counseling and his service is not such to warrant any further treatment..."

12. The SA accepted the ADB recommendation and you were so discharged on 21 September 1992.

After careful review, the Board reached the following conclusions and denied your application for relief.

The Board initially concluded you were appropriately processed for administrative separation based on your record of misconduct. While the Board carefully considered your contention of mistreatment, racial discrimination, medical neglect, and denial of due process, the Board noted you did not deny committing the misconduct and provided no evidence, other than your statement, to substantiate your contentions. Further, contrary to your contention of mistreatment and discrimination, the Board noted that your command suspended all of your punishment awarded at your initial NJP and continually counseled you on how to overcome your conduct issues. The Board determined these action are wholly inconsistent with your allegations that you were being racially targeted by your command. Therefore, the Board determined the presumption of regularity applies to the finding that you committed the misconduct that formed the basis of your administrative separation and no error exists with your OTH characterization of service.

However, because you raised the issue of mental health and Traumatic Brain Injury (TBI), the Board also requested an AO. As part of the Board review process, a licensed clinical psychologist (Ph.D.) reviewed your contentions and the available records, and issued an AO on 1 January 2026. The Ph.D. stated in pertinent part:

> There is evidence that the Petitioner was diagnosed with an Adjustment Disorder and Personality Disorder while in service. An Adjustment Disorder is different from a primary mental health condition such that the symptoms thereof are expected to resolve once situational stressors subside. Petitioner was appropriately referred for psychological evaluation during his enlistment and properly evaluated during a psychiatric visit. His personality disorder diagnosis was based on observed behaviors and performance during his period of service, the information he chose to disclose to the mental health clinician, and the psychological evaluation performed by the mental health clinician. A personality disorder diagnosis is pre-existing to military service by definition, and indicates lifelong characterological traits unsuitable for military service, since they are not typically amenable to treatment within the operational requirements of Naval Service.

> He submitted evidence of diagnoses of ADHD, Adjustment Disorder and PTSD that are temporally remote to service. Furthermore, his description of events that reportedly caused PTSD symptoms does not meet criteria for PTSD as per DSM-V-TR guidelines. Additional records (e.g., active-duty medical records, post-service mental health records describing the Petitioner's diagnosis, symptoms, and their specific link to his separation) may aid in rendering an alternate opinion.

The Ph.D. concluded, "it is my clinical opinion that there is insufficient evidence of a primary mental health condition or TBI that existed in service. There is insufficient evidence to attribute his misconduct to any mental health condition, PTSD or TBI."

In response to the AO, you provided additional evidence in support of your application. After reviewing your rebuttal evidence, the AO remained unchanged.

The Board applied liberal consideration to your claim that you suffered from a TBI and mental health condition, and to the effect that these condition may have had upon the conduct for which you were discharged in accordance with the Hagel and Kurta Memos. Applying such liberal consideration, the Board found insufficient evidence of a diagnosis of mental health condition that may be attributed to military service. This conclusion is supported by the AO and the fact your medical evidence is temporally remote to your service. Additionally, even applying liberal consideration, the Board found insufficient evidence to conclude that the misconduct for which you were discharged was excused or mitigated by TBI or a mental health condition. In this regard, the Board simply had insufficient information available upon which to make such a conclusion and recognized the same concerns raised in the AO. Moreover, even if the Board assumed that your misconduct was somehow attributable to TBI or any mental health conditions, the Board unequivocally concluded that the severity and cumulative negative effect of your serious misconduct more than outweighed the potential mitigation offered by either condition.

In addition to applying liberal consideration to your claimed TBI and mental health condition, and its potential effect upon your conduct in accordance with the Hagel and Kurta Memos, the Board also considered the totality of the circumstances to determine whether equitable relief is warranted in the interests of justice in accordance with the Wilkie Memo. In this regard, the Board considered, amongst other factors, your contentions, the totality of your service, your need for veterans' benefits, the non-violent nature of your misconduct, your relative youth and immaturity at the time of your misconduct, the negative effect your discharge has had on your life, your rehabilitation efforts, your mental health issues, your claim of racial discrimination and disparate treatment, your claim of the harshness of your punishment, and the passage of time since your discharge.

The Board found that the mitigating factors were not nearly sufficient to justify any equitable relief. Specifically, the Board found that the severity of your misconduct far outweighed all of the mitigating factors combined. In particular, the Board found that your conduct showed a complete disregard for military authority and regulations. The Board observed you were given multiple opportunities to correct your conduct deficiencies but chose to continue to commit misconduct, which led to your OTH discharge. Your conduct not only showed a pattern of misconduct but was sufficiently pervasive and serious to negatively affect the good order and

discipline of your command. Further, the Board was not persuaded by your arguments of mistreatment and discrimination. In reviewing the testimony at your ADB, the Board found ample evidence that you were fully supported by your chain of command despite your chronic UA and alcohol related issues. Additionally, the Board believed that it would be unjust to characterize your less than honorable service in the same manner as the service of the thousands of service members who, unlike you, honorably completed their enlistments without engaging in misconduct warranting the early curtailment of their service. Therefore, the Board did not find an upgrade of your discharge to General (Under Honorable Conditions) or Honorable to be warranted in the interests of justice.

Regarding your request for restoration of GI Bill benefits, the Board noted those benefits fall under the cognizance of the Department of Veterans Affairs. The Board has no statutory authority to grant, restore, or even determine your eligibility for the GI Bill. Therefore, the Board took no action on this aspect of your application.

Finally, the Board found no evidence to support your request for a disability retirement. First, the Board found no evidence to support a finding that you were unfit for continue naval service due to a qualifying disability condition. The Board observed you were never referred to a medical board by any of your medical providers and your command did not provide a non-medical assessment that you were unable to perform your military duties. Therefore, the Board determined there was no medical basis for you to be referred to the Disability Evaluation System. Second, as explained previously, the Board found that you were appropriately discharged with an OTH based on your record of misconduct. As a result, even if there was medical evidence of a qualifying disability condition along with evidence of unfitness, the Board concluded you were ineligible for disability processing due to your misconduct based administrative separation. Thus, the Board found no error or injustice with your assigned reason for separation and reentry code.

Accordingly, given the totality of the circumstances, the Board determined your request does not merit relief.

You are entitled to have the Board reconsider its decision upon submission of new matters, which will require you to complete and submit a new DD Form 149. New matters are those not previously presented to or considered by the Board. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records. Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of probable material error or injustice.

Sincerely,

2/26/2026

X [signature]

ELIZABETH A. HILL
Executive Director
Signed by: HILL.ELIZABETH.ANNE.1106915438

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 2

## DD FORM 214

Certificate of Release or Discharge from Active Duty (September 21, 1992) (redacted)

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES — THIS IS AN IMPORTANT RECORD. SAFEGUARD IT. — ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

# 53324 CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| | |
|---|---|
| 1. NAME (Last, First, Middle) | STEVENS, OSEI AJAGBE |
| 2. DEPARTMENT, COMPONENT AND BRANCH | NAVY-USN |
| 3. SOCIAL SECURITY NO. | [redacted] |
| 4.a. GRADE, RATE OR RANK | PRAR |
| 4.b. PAY GRADE | E1 |
| 5. DATE OF BIRTH (YYMMDD) | [redacted] |
| 6. RESERVE OBLIG. TERM. DATE | Year N/A, Month N/A, Day N/A |
| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY | NEW HAVEN, CT |
| 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) | [redacted] |
| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | FITRON ONE (VF-1) |
| 8.b. STATION WHERE SEPARATED | PERSUPPDET NAVAL STATION SAN DIEGO, CA |
| 9. COMMAND TO WHICH TRANSFERRED | N/A |
| 10. SGLI COVERAGE | Amount: $ 100,000 ☐ None |

**11. PRIMARY SPECIALTY** (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)

PR-0000
XX XX XX XX XX XX XX XX XX XX XX XX XX

| 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|
| a. Date Entered AD This Period | 90 | DEC | 11 |
| b. Separation Date This Period | 92 | SEP | 21 |
| c. Net Active Service This Period | 01 | 09 | 09 |
| d. Total Prior Active Service | 00 | 00 | 00 |
| e. Total Prior Inactive Service | 00 | 00 | 00 |
| f. Foreign Service | 00 | 00 | 00 |
| g. Sea Service | 01 | 01 | 22 |
| h. Effective Date of Pay Grade | 92 | MAY | 04 |

**13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED** (All periods of service)

NATIONAL DEFENSE SERVICE MEDAL
XX XX XX XX XX XX XX XX

**14. MILITARY EDUCATION** (Course title, number of weeks, and month and year completed)

PR "A1" SCOL. 9.5WKS, MAY90; FLIGHT LINE SECURITY TRNG, 5DAYS, NOV91
XX XX XX XX XX XX XX XX XX

| | Yes | No |
|---|---|---|
| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | | XX |
| 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | XX | |
| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | XX | |

16. DAYS ACCRUED LEAVE PAID: 0

**18. REMARKS**

NONE
XX XX XX XX XX XX XX XX XX XX XX XX XX XX XX XX XX XX XX XX XX

[redacted]

[redacted]

**SPECIAL ADDITIONAL INFORMATION** (For use by authorized agencies only)

| | |
|---|---|
| 23. TYPE OF SEPARATION | DISCHARGED |
| 24. CHARACTER OF SERVICE (Include upgrades) | UNDER OTHER THAN HONORABLE CONDITIONS |
| 25. SEPARATION AUTHORITY | MILPERSMAN 3630600 AND BUPERS MESSAGE 271841Z DATED AUG92 |
| 26. SEPARATION CODE | GKA |
| 27. REENTRY CODE | RE-4 |
| 28. NARRATIVE REASON FOR SEPARATION | MISCONDUCT-PATTERN OF MISCONDUCT |
| 29. DATES OF TIME LOST DURING THIS PERIOD | TL:92MAY16-92MAY18 |
| 30. MEMBER REQUESTS COPY 4 | OAS Initials |

DD Form 214, NOV 88 S/N 0102-LF-006-5500 *Previous editions are obsolete.* SERVICE - 2

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 3

## ADVISORY OPINION AND REBUTTAL

Advisory Opinion (transmitted January 6, 2026), with Plaintiff's rebuttal (January 9, 2026)

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
701 S. COURTHOUSE RD
ARLINGTON, VA 22204

Docket No: NR20250008252
January 06, 2026

OSEI A STEVENS (HARPER)
[redacted]

Dear Petitioner:

This is in reference to your Application for Correction of Military Record (DD Form 149) received on July 17, 2025.

The record in the case was referred to the appropriate office for an advisory opinion. This opinion has been received and is enclosed for your information. This opinion is advisory only and is not binding upon the Board or the Secretary of the Navy.

If you wish to submit any further statements or additional documentary material in support of this application, you should do so within 30 days from the date of this letter to the following address or e-mail:

Board for Corrections of Naval Records
Attn: DRS – AO Rebuttal
701 S. Courthouse Road, Suite 1001
Arlington, VA 22204-2490

E-Mail: bcnrapplication@us.navy.mil

At the end of the 30-day period, this case will be decided on the evidence of record as soon as a crowded docket will permit.

Sincerely,

Joseph F. Nicosia

J.F. NICOSIA
By direction

Enclosure

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
701 S. COURTHOUSE RD
ARLINGTON, VA 22204

Docket No. 08252-25
Ref: Signature Date

From: [redacted], Ph.D., Licensed Clinical Psychologist
To: Chairman, Board for Correction of Naval Records (BCNR)

Subj: ADVISORY OPINION ICO FORMER MEMBER OSEI A STEVENS (HARPER), USN

1. Petitioner contends he incurred PTSD, TBI, and other mental health conditions during military service, which may have contributed to the circumstances of his separation from service.

2. This opinion only addresses the mental health claims of the petition. I have reviewed the petition(s) and all available military service and medical records. Petitioner entered active-duty Navy service in December 1990.

a. In January 1992, he received NJP for unauthorized absence (UA), and for disobeying a lawful order.

b. In May 1992, he received NJP for five specifications of UA, and two specifications of failing to obey a lawful order.

c. On May 18, 1992, he was referred to psychiatry after ingesting approximately 20 Motrin in an apparent suicide gesture/attempt. Note reads, "He drank 6+ beers…then ingested 20 Motrin in a bout of dysphoria over several situational stressors. However, his biggest motivation is not to go aboard ship today." He was subsequently diagnosed with an Adjustment Disorder, Alcohol Abuse, and Personality Disorder with Narcissistic and Antisocial Traits.

d. On May 20, 1992, he received NJP for UA and missing ship's movement.

e. He was separated from service in September 1992 with an Other than Honorable characterization of service due to pattern of misconduct.

3. Petitioner submitted the following items in support of his claim:

- DD Form 149 statement in support of claim
- Addendum to therapist statement
- Executive Summary
- Letter from MD noting Petitioner's mother was hospitalized (June 1992)
- Letter from LCSW (August 2023) noting diagnoses and treatment for ADHD, Adjustment Disorder and PTSD
- Sworn personal statement
- Partial active duty administrative and medical records

Controlled by: Department of the Navy
Controlled by: Board for Correction of Naval Records
CUI Category: PRVCY
Distribution/Dissemination Control:FEDCON

CUI

4. There is evidence that the Petitioner was diagnosed with an Adjustment Disorder and Personality Disorder while in service. An Adjustment Disorder is different from a primary mental health condition such that the symptoms thereof are expected to resolve once situational stressors subside. Petitioner was appropriately referred for psychological evaluation during his enlistment and properly evaluated during a psychiatric visit. His personality disorder diagnosis was based on observed behaviors and performance during his period of service, the information he chose to disclose to the mental health clinician, and the psychological evaluation performed by the mental health clinician. A personality disorder diagnosis is pre-existing to military service by definition, and indicates lifelong characterological traits unsuitable for military service, since they are not typically amenable to treatment within the operational requirements of Naval Service.

He submitted evidence of diagnoses of ADHD, Adjustment Disorder and PTSD that are temporally remote to service. Furthermore, his description of events that reportedly caused PTSD symptoms does not meet criteria for PTSD as per DSM-V-TR guidelines. Additional records (e.g., active-duty medical records, post-service mental health records describing the Petitioner's diagnosis, symptoms, and their specific link to his separation) may aid in rendering an alternate opinion.

5. Based on the available evidence, it is my clinical opinion that there is insufficient evidence of a primary mental health condition or TBI that existed in service. There is insufficient evidence to attribute his misconduct to any mental health condition, PTSD or TBI.

1/1/2026

[redacted]

# Rebuttal to Advisory Opinion

## Docket#: NR20250008252 and AO Docket#: 08252-25

**Petitioner: Osei A. Harper (formerly Osei A. Stevens)**
**Branch: United States Navy (1990–1992)**
**Document Under Review:** Advisory Opinion dated 6 January 2026, transmitted on BCNR letterhead, unsigned, clinical author withheld.

## Table of Contents


Table of Contents ........ 1
I. Introduction and Purpose ........ 3
II. Nature and Role of the Advisory Opinion ........ 3
Procedural Posture ........ 4
III. Summary of the Advisory Opinion's Assertions ........ 4
IV. Separation Basis vs. Advisory Opinion Theory ........ 5
V. Diagnostic Framework and Methodological Integrity ........ 6
The Personality Disorder Framework Cannot Bear the Weight Assigned to It ........ 8
VI. Etiological Hierarchy (Personality Disorder as Diagnosis of Last Resort) ........ 12
VII. ADHD and the Neurodivergence Differential ........ 12
VIII. DSM-5-TR Alignment: Trauma-Response vs. Character Pathology ........ 13
A. The Stressor: Threatened Death or Serious Injury (Criterion A) ........ 13
B. Avoidance Symptoms as "Misconduct" (Criterion C) ........ 14
C. Reckless and Self-Destructive Behavior (Criterion E) ........ 14
IX. TBI as Competing Etiology (Reported History + Persistent Physical Finding) ........ 16
A. Documented Collision and Acute Treatment ........ 16
B. Persistent Physical Evidence ........ 16
C. Overlapping Symptomatology ........ 16
D. Etiologic Timing ........ 17
X. Structural Barrier to Diagnosis Does Not Equal Absence of Condition ........ 17
XI. Liberal Consideration is the Controlling Standard ........ 18

XII. Civilian Status and Asymmetrical Exposure ........ 19
Procedural Asymmetry ........ 19
XIII. Cumulative Diagnostic Failure ........ 20
XIV. Requested Disposition ........ 21
XV. Closing and Signature ........ 21
Clinical and Legal Deficiency ........ 21
Conclusion ........ 22
APPENDIX A — EVIDENCE INDEX (Dual-Column Hybrid) ........ 23

---

THIS SPACE LEFT INTENTIONALLY BLANK

## I. Introduction and Purpose

My name is **Osei A. Harper (formerly Osei A. Stevens)**, United States Navy (1990–1992). I submit this rebuttal in response to the **Advisory Opinion dated 6 January 2026**, issued on official letterhead and entered into the Board for Correction of Naval Records (BCNR) evidentiary record.

The Advisory Opinion addresses questions of mental health, diagnosis, and causation related to my 1992 separation from naval service. Because the Advisory Opinion carries significant weight in BCNR adjudication and imputes lifelong character pathology, it must be examined with care. Accuracy in such instruments is not merely academic; it has direct consequences on whether a veteran remains burdened with stigma, denied correction, or mischaracterized in the official record.

This rebuttal exists for a single purpose: to correct the Advisory Opinion's methodological, diagnostic, and policy deficiencies so that the Board may evaluate my petition on the basis of clinical and factual accuracy, consistent with governing standards.

---

## II. Nature and Role of the Advisory Opinion

Although styled as an "opinion," the document functions as a **state instrument** within the adjudication pipeline. It guides the Board's decision-making, imputes diagnoses, and offers causal explanations for service-related conduct. It is not a harmless document. Once issued on official letterhead, shielded by institutional anonymity, and transmitted into the record, it becomes a dispositive artifact.

Notably, I am a civilian petitioner. I am no longer subordinate to a command structure, and I have no military duty to submit to psychiatric characterization without recourse. Yet the Advisory Opinion imputes a lifelong personality disorder without affording me an opportunity to question the clinician, interrogate the methodology, or seek clarification from the originating professional. The clinician remains anonymous; I remain exposed. This **procedural asymmetry** would not withstand scrutiny in any civilian adjudicatory context.

For these reasons, it is essential that the Advisory Opinion be subjected to the same standards of rigor that it implicitly claims authority from.

### Procedural Posture

Although styled as an "opinion," the Advisory Opinion is transmitted on official BCNR letterhead and entered into the evidentiary stream. It contains clinical assertions, diagnostic conclusions, and causation theories that bear directly on adjudication. The document is unsigned, and the clinical author is withheld. There is no disclosure of specialty, licensure, methodology, interview, review of collateral sources, or diagnostic standard applied. In any civilian setting, such a document would be classified as a clinical impression at best — not a dispositive psychiatric attribution.

---

## III. Summary of the Advisory Opinion's Assertions

The Advisory Opinion asserts that:

*"In-service diagnoses included Adjustment Disorder, Alcohol Abuse, and Personality Disorder with narcissistic and antisocial traits."* (Advisory Opinion, p.1; hereafter "AO")

It further asserts that:

*"There is insufficient evidence that PTSD existed in service or contributed to the misconduct that resulted in discharge."* (AO p.1)

It characterizes later diagnoses of PTSD, ADHD, and Adjustment Disorder as:

*"temporally remote"* (AO p.1)

and concludes:

*"There is insufficient evidence that TBI contributed to conduct in service."* (AO p.1)

Read together, the Advisory Opinion advances a unified theory:

1. A **lifelong personality disorder** existed prior to service;
2. This pathology, not trauma, explains the behavioral crisis in 1992;
3. Post-service diagnoses are irrelevant due to elapsed time;
4. TBI did not contribute to the crisis; and
5. No mental health condition mitigates the misconduct that led to separation.

This framework is the lens through which the Advisory Opinion seeks to close the question.

---

## IV. Separation Basis vs. Advisory Opinion Theory

It must be observed at the outset that the Department of the Navy did **not** discharge me for a personality disorder. My DD-214 lists the reason as:

**"MISCONDUCT – PATTERN OF MISCONDUCT"**

With a characterization of "**General — Under Other Than Honorable Conditions**".

No personality disorder appears on the DD-214, nor was I processed through the medical channels required for separation on psychiatric grounds.This is not merely semantic. Under Hagel (2014), Carson (2014), Kurta (2017), and Wilkie (2018), Boards must evaluate whether misconduct was consistent with trauma — not whether a post-hoc psychiatric label can replace the misconduct basis ex machina.

This creates a material divergence:

- **The Navy's 1992 theory of separation** was **misconduct**.
- **The Advisory Opinion's 2026 theory of separation** is **personality disorder**.

The Advisory Opinion, therefore, attempts to retroactively substitute a medical rationale that the Navy itself did **not** use at the time.

Such basis-substitution is significant. Under Hagel, Kurta, and Wilkie, Boards must evaluate whether misconduct was **consistent with symptoms of trauma, stress, or mental-health conditions**, not whether a retroactive personality label can be deployed to negate mitigation.

---

## V. Diagnostic Framework and Methodological Integrity

If the Advisory Opinion is to rely on personality disorder as the dispositive explanation for my in-service crisis, it must meet the minimum diagnostic requirements imposed by DSM-5 and DSM-5-TR. These include:

- **Pervasiveness** across contexts

- **Stability** across time
- **Onset** traceable to adolescence or early adulthood
- **Enduring** trait pattern, not situational behavior
- **Cross-domain impairment**
- **Exclusion** of trauma, medical, or substance etiologies

None of these criteria are addressed. The Advisory Opinion cites no evidence of:

- childhood behavioral impairment,
- adolescent conduct disorder,
- academic dysfunction,
- social instability,
- pervasive authority conflict,
- or multi-domain dysfunction prior to service.

Nor does it exclude:

- Adjustment Disorder (diagnosed in service),
- TBI (documented by history),
- trauma/stressor-related disorders,
- acute stress reactions,
- substance-related behavioral impairment,
- or neurodevelopmental conditions.

Instead, the Advisory Opinion leaps directly to personality pathology to explain a crisis that occurred in a context that included:

- a suicidal gesture,
- alcohol intoxication,
- acute operational stress,
- documented distress over family health,
- racial discrimination and threats,
- non-contemporaneous disciplinary actions, and
- imminent deployment.

This is clinically and methodologically insufficient. Under DSM standards, personality disorder is the **diagnosis of exclusion**, not the diagnosis of convenience.

## The Personality Disorder Framework Cannot Bear the Weight Assigned to It

The Advisory Opinion treats Personality Disorder as a settled explanation for the 1992 behavioral crisis. Under DSM-5 and DSM-5-TR, this conclusion cannot be supported without meeting **four mandatory criteria**:

1. **Enduring Pattern**

   The pattern must be "enduring, inflexible, and pervasive across a broad range of personal and social situations" (DSM-5-TR 2022, p. 645).

2. **Early Onset**

The pattern must be "stable and of long duration" with onset traceable to "adolescence or early adulthood" (DSM-5-TR 2022, p. 645).

3. **Functional Impairment**

   The pattern must cause "clinically significant distress or impairment in social, occupational, or other important areas of functioning" (DSM-5-TR 2022, p. 645).

4. **Diagnostic Exclusion**

   The pattern cannot be better explained by another mental disorder, substance use, trauma, or medical condition (DSM-5-TR 2022, p. 646).

The Advisory Opinion does not demonstrate any of these.

*A. No Evidence of Enduring Pervasive Pattern*

The Advisory Opinion identifies no cross-domain impairment prior to enlistment. In fact, the pre-service record directly contradicts the personality pathology hypothesis:

- I maintained **A and B average academic performance** across multiple educational domains.
- I participated in **competitive extracurricular programs**, including a Yale University–affiliated arts program.
- I earned **top-percentile ASVAB scores**, qualifying for technical ratings.
- I completed **boot camp and A-School** without evidence of pervasive interpersonal or conduct dysfunction.

These domains require sustained attention, impulse control, frustration tolerance, social cooperation, and long-range goal orientation — all of which are incompatible with severe narcissistic or antisocial traits. Under DSM-5-TR, antisocial traits require evidence of conduct disorder prior to age 15 (DSM-5-TR 2022, p. 659). No such history exists in the record, nor does the Advisory Opinion claim one.

*B. No Evidence of Early Onset*

There is no evidentiary basis for early adolescence onset. The Advisory Opinion does not identify:

- academic failure,
- disciplinary expulsions,
- juvenile legal involvement,
- social instability,
- family conflict patterns,
- or occupational impairment prior to service.

Absent these, early onset cannot be presumed. DSM-5-TR is explicit: Personality Disorders are **not** diagnosed solely from stress-mediated acute episodes (DSM-5-TR 2022, p. 647).

*C. No Evidence of Lifelong Functional Impairment*

Following discharge, longitudinal functioning contradicts the Advisory Opinion's theory. Over the subsequent three decades I:

- sustained long periods of **employment and collaboration**,
- completed a **Master's degree**,
- obtained over 30-industry certifications

- taught, published, and developed **patent-pending computational architecture**,
- provided **expert consultative services** to major enterprises,
- and maintained **therapeutic engagement** spanning more than twenty years.

These outcomes require adaptive functioning across multiple domains forbidden by antisocial or narcissistic pathology. Narcissistic Personality Disorder predicts "vulnerability in self-esteem, need for admiration, and impaired empathy" (DSM-5-TR 2022, p. 676). Antisocial Personality Disorder predicts "irresponsibility, deceit, impulsivity, aggression, and lack of remorse" (DSM-5-TR 2022, p. 660). None of these traits persist longitudinally in my post-service record.

*D. Diagnostic Exclusion Was Not Performed*

DSM requires that personality disorders be diagnosed **only after excluding** other etiologies. In 1992, multiple competing explanations existed:

- **Adjustment Disorder** (diagnosed contemporaneously)
- **Alcohol Intoxication** (documented)
- **Acute Stressors** (documented)
- **Family medical crisis** (documented)
- **Operational stress during deployment cycle** (documented)
- **Self-harm gesture** (documented)
- **TBI history** (documented by history)
- **PTSD and ADHD** (later diagnosed once care became accessible)

Under DSM standards, these etiologies **must be ruled out** before character pathology is invoked. They were not. Personality Disorder became the explanation of convenience.

## VI. Etiological Hierarchy (Personality Disorder as Diagnosis of Last Resort)

DSM-5-TR adopts an implicit etiologic hierarchy for behavioral dysregulation:

1. **Trauma and Stressor-Related Disorders**
2. **Substance-Related Disorders**
3. **Neurodevelopmental Disorders**
4. **Mood/Anxiety Disorders**
5. **Medical Conditions (including TBI)**
6. **Personality Disorders**

Personality Disorders occupy the **bottom** of the hierarchy because they are only appropriate when the clinical picture cannot be better accounted for by conditions higher on the stack.

In my case, conditions **(1)–(5)** were either documented, suspected, or later confirmed. The Advisory Opinion skipped the hierarchy entirely and defaulted to the lowest rung without exclusion. This violates DSM methodology.

## VII. ADHD and the Neurodivergence Differential

The Advisory Opinion dismisses later diagnoses as "temporally remote." This framing ignores two clinically significant facts:

1. **ADHD frequently remains undiagnosed until adulthood**

Particularly in high-IQ individuals (DSM-5-TR 2022, p. 63).

2. **ADHD is often masked until exposed to high-stress executive environments** such as military operational tempo.

Traits that the Advisory Opinion interprets as narcissistic or antisocial — such as:

- impulsivity,
- difficulty with authority,
- task-switching friction,
- and emotional reactivity under stress

are well within ADHD phenotypes and do **not** require personality pathology to explain.

---

## VIII. DSM-5-TR Alignment: Trauma-Response vs. Character Pathology

The Advisory Opinion (AO) misattributes symptomatic responses to a hostile command environment as enduring character flaws. Under the **DSM-5-TR**, my 1992 clinical presentation aligns more accurately with **Post-Traumatic Stress Disorder (PTSD)** and **Adjustment Disorder** than with the "Personality Disorder" label assigned by the AO.

### A. The Stressor: Threatened Death or Serious Injury (Criterion A)

The AO characterizes my distress as "dysphoria over situational stressors". However, the DSM-5-TR defines a traumatic stressor as:

- **Criterion A1:** Exposure to "threatened death".

- **Clinical Alignment:** A command environment involving racial animus and specific threats from a Commanding Officer (CO) constitutes a credible threat to life and physical integrity. The AO's dismissal of this environment ignores the objective psychological impact of **targeted racial hostility** as a life-threatening stressor.

## B. Avoidance Symptoms as "Misconduct" (Criterion C)

The AO cites my "motivation... not to go aboard ship" as a behavioral failure. The DSM-5-TR identifies this specifically as a clinical symptom:

- **Criterion C1:** "Avoidance of or efforts to avoid distressing memories, thoughts, or feelings about or closely associated with the traumatic event(s)".
- **Criterion C2:** "Avoidance of or efforts to avoid external reminders (people, places, conversations, activities, objects, situations) that arouse distressing memories, thoughts, or feelings".
- **Clinical Alignment:** My unauthorized absences (UA) and missing ship's movement were not "antisocial" acts; they were **active avoidance behaviors**. I was avoiding the "external reminder" (the ship and the CO) that represented an existential threat.

## C. Reckless and Self-Destructive Behavior (Criterion E)

The AO uses my suicide gesture (ingesting 20 Motrin) to support a "Narcissistic/Antisocial" profile. The DSM-5-TR reclassifies this behavior under arousal and reactivity:

- **Criterion E2:** "Reckless or self-destructive behavior".
- **Note on Function:** The DSM states these behaviors may be a way of "dampening or escaping from distressing internal states".

- **Clinical Alignment:** Facing a deployment I believed I would not survive, self-harm was a maladaptive response to an intolerable external reality—not a characterological "gesture".

## D. The Failure of Differential Diagnosis (Personality Disorder Exclusion)

The AO claims a Personality Disorder is "pre-existing... by definition". However, the DSM-5-TR mandates strict exclusion criteria:

- **General Personality Disorder, Criterion F:** "The enduring pattern is not better explained as a manifestation or consequence of another mental disorder".
- **Clinical Alignment:** The AO failed this requirement by ignoring the "Adjustment Disorder" and "Alcohol Abuse" diagnosed *contemporaneously*. Under DSM rules, if behavior can be explained by **Adjustment Disorder with Disturbance of Conduct (309.3)**, a Personality Disorder diagnosis is inappropriate.

This is the most parsimonious explanation.

## Summary Table for the Board's Review

| BCNR Advisory Opinion Assertion | DSM-5-TR Diagnostic Correction | DSM-5-TR Page Ref. |
|---|---|---|
| **"Pattern of misconduct"** | **Avoidance of external reminders (Criterion C2)** | p. 302 |
| **"Suicide gesture/Reckless act"** | **Self-destructive behavior (Criterion E2)** | p. 302 |
| **"Narcissistic/Antisocial traits"** | **Negative alterations in mood (Criterion D)** | p. 302 |
| **"Situational stressors"** | **Threatened death/Serious injury (Criterion A)** | p. 301 |
| **"Temporally remote diagnoses"** | **Structural barrier to care (Kurta 2017)** | Kurta Memo §3 |

## IX. TBI as Competing Etiology (Reported History + Persistent Physical Finding)

The Advisory Opinion dismisses Traumatic Brain Injury (TBI) with a single conclusory statement:

"There is insufficient evidence that TBI contributed to the misconduct that resulted in discharge."

(Advisory Opinion, p.1)

This dismissal is clinically inadequate for several reasons.

### A. Documented Collision and Acute Treatment

In 1991 I was involved in a motor vehicle collision requiring emergency evaluation at **Scripps Memorial Hospital**. Head injury was noted at the time. This constitutes **reported medical history** with contemporary documentation.

### B. Persistent Physical Evidence

I continue to bear a **subdural keloid** at the site of impact. Its persistence 34 years later constitutes an **objective physical finding** consistent with cranial trauma. In most clinical settings, such a persistent lesion would trigger a TBI history inquiry, not a psychiatric dismissal.

### C. Overlapping Symptomatology

TBI symptoms overlap significantly with behavioral manifestations later attributed to misconduct, including:

- disinhibition,
- impaired executive function,
- emotional lability,
- irritability,

- impulse control difficulties,
- and attentional dysregulation.

DSM-5-TR specifically identifies such features in **Major or Mild Neurocognitive Disorder Due to TBI** (DSM-5-TR 2022, p. 176–178). Under DSM methodology, TBI must therefore be **excluded before** personality pathology is presumed. The Advisory Opinion did not perform that exclusion.

### D. Etiologic Timing

The collision occurred **before** the 1992 behavioral crisis. This temporal alignment is critical. A causal chain cannot be dismissed without analysis, particularly when it offers a non-pathological explanation for stress-reactive conduct.

The Advisory Opinion offers no such analysis. It simply declares insufficiency without demonstrating that the insufficiency was determined through clinical methods rather than administrative convenience.

---

## X. Structural Barrier to Diagnosis Does Not Equal Absence of Condition

The Advisory Opinion characterizes later diagnoses of PTSD, ADHD, and Adjustment Disorder as “temporally remote.” This framing is clinically misleading because it ignores a fundamental structural fact:

**I was legally barred from accessing diagnostic pathways that would have confirmed those conditions earlier.**

At the time of separation:

1. An Other Than Honorable discharge restricted or eliminated VA care;
2. Civilian mental health care was cost-prohibitive;
3. Employer-based coverage was not guaranteed;
4. The discharge itself impaired employability, further restricting access;
5. No universal public mental health system existed.

Diagnostic delay, therefore, reflects **structural foreclosure**, not absence of pathology. To penalize a veteran for diagnostic inaccessibility is to compound the original injustice under review.

This principle is embedded directly into the **Kurta Memorandum (2017)** and **Wilkie Memorandum (2018)**, which instruct Boards to consider symptom-consistent behavior even when a formal diagnosis occurs later due to systemic barriers.

---

## XI. Liberal Consideration is the Controlling Standard

The Advisory Opinion evaluates the record as though the only relevant question were whether PTSD was formally diagnosed in service. That is not the governing standard.

The controlling framework derives from:

- **Hagel Memorandum (2014):** PTSD cases to receive liberal consideration;
- **Carson Memorandum (2014):** expands the scope of review;
- **Kurta Memorandum (2017):** extends liberal consideration to a broader class of mental health conditions and clarifies symptom-behavior linkage analysis;
- **Wilkie Memorandum (2018):** affirms evidentiary posture and application requirements.

Under Kurta, Boards must evaluate whether in-service misconduct is:

"consistent with the symptoms of PTSD, TBI, or other trauma-related conditions,"

even where a diagnosis was absent at the time.

This standard **squarely applies** here. The Advisory Opinion does not apply it.

---

## XII. Civilian Status and Asymmetrical Exposure

As of this rebuttal, I am a civilian. I am not under UCMJ jurisdiction. Yet the Advisory Opinion imputes a lifelong personality disorder, names no clinician, offers no interview, provides no assessment, and affords no right to cross-examination or clarification.

This creates a **procedural asymmetry** unheard of in civilian administrative law:

- **The clinician is protected;**
- **The veteran is exposed;**
- **The label is indelible;**
- **The forum is administrative;**
- **The stakes are reputational and legal;**
- **And no adversarial mechanism exists for correction unless I create it.**

That is the purpose of this artifact. Silence would convert an accusation into a finding through procedural convenience. I refuse to allow that conversion.

### Procedural Asymmetry

In civilian adjudication, psychiatric diagnosis or attribution requires:

(1) an identifiable clinician,

(2) a disciplinary background,

(3) methodological transparency, and

(4) opportunity for contestation.

The Advisory Opinion provides none of these. Instead, the clinician is shielded, the diagnostic label is public, and the petitioner is denied the opportunity to confront or clarify. This would be impermissible in any civilian administrative forum involving reputational, legal, or medical stakes.

---

## XIII. Cumulative Diagnostic Failure

When evaluated together, the Advisory Opinion:

1. Fails to apply DSM criteria;
2. Fails to apply Liberal Consideration;
3. Fails to conduct differential diagnosis;
4. Fails to exclude competing etiologies;
5. Fails to consider longitudinal functioning;
6. Fails to explain TBI dismissal;
7. Fails to account for structural barriers to care;
8. Replaces diagnosis with administrative narrative.

A conclusion cannot stand when built on a collapsed method.

---

## XIV. Requested Disposition

I respectfully request that the Board:

1. **Decline to adopt the Advisory Opinion as dispositive or controlling;**
2. **Reject the Personality Disorder explanation as unsupported;**
3. **Apply Liberal Consideration to the in-service behavioral crisis;**
4. **Acknowledge TBI, ADHD, and PTSD as competing etiologies;**
5. **Evaluate the separation through modern standards rather than 1992 administrative doctrine;**
6. **Grant appropriate corrective relief, including upgrade and narrative correction.**

---

## XV. Closing and Signature

### Clinical and Legal Deficiency

By failing to align its findings with the mandatory diagnostic hierarchy of the **DSM-5-TR**, the Advisory Opinion has reached a conclusion that is clinically unsound. Furthermore, by ignoring the environmental trauma of racial hostility, the AO has failed to apply **Liberal Consideration** as required by the **Kurta Memorandum (2017)**.

The "pattern of misconduct" was not the result of a personality flaw, but a survival-oriented reaction to a life-threatening command environment. I respectfully request that the Board reject the AO's theory and grant relief based on the clear, evidence-based symptoms of service-connected trauma and TBI.

Additionally, this Advisory Opinion, issued anonymously and without due process, enters the record at a moment in which federal judicial review is pending (In re Osei Harper, D.C. Cir. No. 25-5424).

Whether by design or inadvertence, such timing has collateral effects. It introduces psychiatric character-attribution into the administrative record in a form that may be cited as if it were a clinical fact, despite lacking the methodological criteria required to support it. The Board should decline to adopt such an instrument as dispositive.

## Conclusion

I submit this rebuttal not to assign blame, but to restore accuracy and protect my character from assassination. A diagnosis is not merely a word — it is a sentence. It shapes how people and institutions remember a person long after their voice has left the room. I am supplying my voice while I still can.

Respectfully submitted,

/s/ Osei Harper

Osei Harper Digitally signed by Osei Harper
Date: 2026.01.09
01:35:45 -05'00'

**OSEI A HARPER**

(formerly **Osei A. Stevens**)

United States Navy, 1990–1992

Date: 01/09/2026

# APPENDIX A — EVIDENCE INDEX

| Exhibit | Purpose / Relevance Narrative |
|---|---|
| **Exhibit A — DD-214 (1992)**<br>**Department of the Navy**<br>**Separation Basis: Misconduct — Pattern of Misconduct** | Establishes that the Navy did **not** discharge Petitioner for a psychiatric condition, did **not** process medical separation, and did **not** rely on a personality disorder diagnosis in 1992. Demonstrates divergence between the Navy's contemporaneous rationale and the Advisory Opinion's retroactive psychiatric attribution. |
| **Exhibit B — USPTO Provisional Filing: Harper Engine (Provisional Patent Application)**<br>**United States Patent & Trademark Office** | Demonstrates post-service **computational architecture capability, abstract reasoning, algorithmic modeling, and systems integration.** Patent prosecution requires rigorous, structured cognition, domain-specific technical literacy, and multi-stage intellectual commitment, inconsistent with severe personality disorder pathology. |
| **Exhibit C — USPTO Provisional Filing: FUSE Framework Algorithms (Provisional Patent Application)**<br>**United States Patent & Trademark Office** | Demonstrates post-service **methodological invention, applied theoretical modeling, sentiment analytics, and organizational governance architecture.** This reflects not merely technical proficiency but **application of mental computation to social systems**, disconfirming the Advisory Opinion's implied claim of persistent interpersonal dysfunction. |
| **Exhibit D — U.S. Copyright Registration: FUSE Framework**<br>**United States Copyright Office** | Demonstrates sustained authorship, conceptual development, and completion of a multi-year intellectual project. Copyright registration provides federal validation of cognitive throughput and structured composition incompatible with severe narcissistic or antisocial pathology. |
| **Exhibit E — Master's Degree In Information Technology Management** | Demonstrates sustained methodological execution, high-level executive function, targeted focus, authorship, conceptual development, neural plasticity, adherence to stringent rules, respect for authority, and completion of a multi-year socio-emotional intellectual project. |

**EXHIBIT C — TRANSMITTAL LEDGER | Transmissions directed to the Department of the Navy / Board for Correction of Naval Records | Harper v. United States Department of the Navy, No. 4:26-cv-00395-AW-MAF (N.D. Fla.)**

*Scope & limitations: Compiled for this litigation from Plaintiff's contemporaneous Outlook Sent Items and postmaster / read receipts. Limited to transmissions directed to the Department of the Navy and the Board for Correction of Naval Records; collateral transmissions to other recipients are omitted. Offered on the question of record completeness — what was transmitted to and received by the Board — not as merits evidence outside the administrative record. Receipt vocabulary is exact: sent; relayed/delivered to BCNR; read by BCNR; receipt not individually mapped; or receipt not located. No transmission is characterized beyond its individually documented status.*

| No. | Date Sent (UTC) | Subject | Recipient (Navy / BCNR) | Materials / Attachments Identified | Documented Receipt Status | Source / Custody |
|---|---|---|---|---|---|---|
| T-01 | 2025-07-17 16:43 | BCNR Submission — Email 1 of 4 — DD-149 + Core Narrative | BCNRApplication@us.navy.mil | DD Form 149; Claims and Supporting Evidence.zip (core evidentiary packet) | Relayed / delivered to BCNR 2025-07-17 16:44:08 UTC (delivery complete); read by BCNR mailbox 2025-07-17 16:48:44 UTC | Outlook Sent Item + relay & read receipts |
| T-02 | 2025-07-17 16:54 | BCNR Submission — Email 2 of 4 — Administrative Discharge Board Documents | BCNRApplication@us.navy.mil | Admin Discharge Board 1992.zip (contemporaneous legal summaries, rebuttals, sworn statements, witness accounts) | Sent; BCNR receipt not located | Outlook Sent Item |
| T-03 | 2025-07-17 17:44 | BCNR Submission — Email 3 of 4 — Medical and VA Records | BCNRApplication@us.navy.mil | Health Record — USN.zip (injury, hospitalization, and mental-health documentation) | Relayed / delivered to BCNR 2025-07-17 17:45:05 UTC (delivery complete) | Outlook Sent Item + relay rece |
| T-04 | 2025-07-17 17:32 | BCNR Submission — Email 4 of 4 — Education and Published Works | BCNRApplication@us.navy.mil | Certs and Degrees.zip; Published Works.zip (transmitted for equitable consideration) | Sent; BCNR receipt not located | Outlook Sent Item |
| T-05 | 2026-01-09 06:52 | Supplemental Submission in Response to Advisory Opinion — Docket NR20250008252 | bcnrapplication@us.navy.mil | Rebuttal to Advisory Opinion; DD-214; USPTO filings; U.S. Copyright Registration; Master's Degree; Supplemental DD-149 | Sent; Outlook attachment metadata visible; BCNR receipt not individually mapped | Outlook Sent Item |
| T-06 | 2026-01-28 19:54 | Resubmission — Flat PDFs — Docket NR20250008252 | bcnrapplication@us.navy.mil | Flat-PDF versions of the Jan. 9 package (7 attachments): Rebuttal; DD-214; Harper Engine; FUSE algorithms; FUSE copyright; Master's Degree; Supplemental DD-149 | Sent; Outlook metadata confirms 7 attached PDFs; BCNR receipt not individually mapped | Outlook Sent Item |
| T-07 | 2025-07-22 08:03 | Sworn Addendum — BCNR Case Submission | BCNR (with additional copied recipients) | Sworn Addendum Statement and Chronology.pdf | Sent; postmaster relay / delivered receipts exist for the multi-recipient transmission; recipient-specific BCNR receipt not individually mapped | Outlook Sent Item + postmaster receipts |
| T-08 | 2025-08-08 04:05 | Coordinated Resolution Brief and Supplemental Evidence — BCNR Case NR20250008252 | USN NCR ASSTSECNAV MRA DC Mailbox BCNR Application (with additional recipients) | Supplemental evidence package identified in the message body | Read by BCNR mailbox 2025-08-08 08:55:10 UTC; postmaster relay receipts also present | Outlook Sent Item + BCNR read receipt + postmaster receipts |

*Row omitted from this curated exhibit: the August 30, 2025 oversight notice directed to congressional / HASC recipients — collateral to the Navy/BCNR record and not offered here.*

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 4

## TRANSMITTAL LEDGER

Plaintiff's transmissions to the Department of the Navy and the Board for Correction of Naval Records

**EXHIBIT 4 — TRANSMITTAL LEDGER | Transmissions directed to the Department of the Navy / Board for Correction of Naval Records | Harper v. United States Department of the Navy, No. 4:26-cv-00395-AW-MAF (N.D. Fla.)**

*Scope & limitations: Compiled for this litigation from Plaintiff's contemporaneous Outlook Sent Items and postmaster / read receipts. Limited to transmissions directed to the Department of the Navy and the Board for Correction of Naval Records; collateral transmissions to other recipients are omitted. Offered on the question of record completeness — what was transmitted to and received by the Board — not as merits evidence outside the administrative record. Receipt vocabulary is exact: sent; relayed/delivered to BCNR; read by BCNR; receipt not individually mapped; or receipt not located. No transmission is characterized beyond its individually documented status.*

| No. | Date Sent (UTC) | Subject | Recipient (Navy / BCNR) | Materials / Attachments Identified | Documented Receipt Status | Source / Custody |
|---|---|---|---|---|---|---|
| T-01 | 2025-07-17 16:43 | BCNR Submission — Email 1 of 4 — DD-149 + Core Narrative | BCNRApplication@us.navy.mil | DD Form 149; Claims and Supporting Evidence.zip (core evidentiary packet) | Relayed / delivered to BCNR 2025-07-17 16:44:08 UTC (delivery complete); read by BCNR mailbox 2025-07-17 16:48:44 UTC | Outlook Sent Item + relay & read receipts |
| T-02 | 2025-07-17 16:54 | BCNR Submission — Email 2 of 4 — Administrative Discharge Board Documents | BCNRApplication@us.navy.mil | Admin Discharge Board 1992.zip (contemporaneous legal summaries, rebuttals, sworn statements, witness accounts) | Sent; BCNR receipt not located | Outlook Sent Item |
| T-03 | 2025-07-17 17:44 | BCNR Submission — Email 3 of 4 — Medical and VA Records | BCNRApplication@us.navy.mil | Health Record — USN.zip (injury, hospitalization, and mental-health documentation) | Relayed / delivered to BCNR 2025-07-17 17:45:05 UTC (delivery complete) | Outlook Sent Item + relay receipt |
| T-04 | 2025-07-17 17:32 | BCNR Submission — Email 4 of 4 — Education and Published Works | BCNRApplication@us.navy.mil | Certs and Degrees.zip; Published Works.zip (transmitted for equitable consideration) | Sent; BCNR receipt not located | Outlook Sent Item |
| T-05 | 2026-01-09 06:52 | Supplemental Submission in Response to Advisory Opinion — Docket NR20250008252 | bcnrapplication@us.navy.mil | Rebuttal to Advisory Opinion; DD-214; USPTO filings; U.S. Copyright Registration; Master's Degree; Supplemental DD-149 | Sent; Outlook attachment metadata visible; BCNR receipt not individually mapped | Outlook Sent Item |
| T-06 | 2026-01-28 19:54 | Resubmission — Flat PDFs — Docket NR20250008252 | bcnrapplication@us.navy.mil | Flat-PDF versions of the Jan. 9 package (7 attachments): Rebuttal; DD-214; Harper Engine; FUSE algorithms; FUSE copyright; Master's Degree; Supplemental DD-149 | Sent; Outlook metadata confirms 7 attached PDFs; BCNR receipt not individually mapped | Outlook Sent Item |
| T-07 | 2025-07-22 08:03 | Sworn Addendum — BCNR Case Submission | BCNR (with additional copied recipients) | Sworn Addendum Statement and Chronology.pdf | Sent; postmaster relay / delivered receipts exist for the multi-recipient transmission; recipient-specific BCNR receipt not individually mapped | Outlook Sent Item + postmaster receipts |
| T-08 | 2025-08-08 04:05 | Coordinated Resolution Brief and Supplemental Evidence — BCNR Case NR20250008252 | USN NCR ASSTSECNAV MRA DC Mailbox<br>BCNR Application (with additional recipients) | Supplemental evidence package identified in the message body | Read by BCNR mailbox 2025-08-08 08:55:10 UTC; postmaster relay receipts also present | Outlook Sent Item + BCNR read receipt + postmaster receipts |

*Row omitted from this curated exhibit: the August 30, 2025 oversight notice directed to congressional / HASC recipients — collateral to the Navy/BCNR record and not offered here.*

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 5

## COMPARATIVE RECORD MATRIX v2

Post-decision inventory of documentary discontinuities — offered on record completeness; not before the Board

## Comparative Record Matrix: NPRC Production vs. Expanded Personal 1992 Archive

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Metric | Value | Interpretation | | | | | |
| Pre-discharge Parts 1-6 | 319 | Duplicates retained | | | | | |
| Trial/legal-prep Parts 1-3 | 202 | 82 + 84 + 36 pages | | | | | |
| Separate restriction / witness / TPU files | 13 | 3 + 8 + 2 pages | | | | | |
| Expanded personal corpus | 534 | All scanned personal files; duplicates retained | | | | | |
| NPRC personnel | 73 | Government production | | | | | |
| NPRC medical | 166 | Government production | | | | | |
| Combined NPRC corpus | 239 | Personnel + medical | | | | | |
| **Raw page-count delta** | | | | | | | |
| Matrix rows | | | | | | | |
| The BCNR Lane column separates Frizelle material that was before the Board but unaddressed from New Matter that can support § 1552 reconsideration. The receipted BCNR transmittal index is the controlling sorter; preliminary assignments must be revised wherever that index proves a different submission history. | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| The matrix now records corrections in both directions. The 1070/605 assignment ledger exists, while the source orders class is incomplete. The four-page BUPERS 271841Z message and ambulance/ER records are found and removed from missing lists. TPU is post-board, with M-297 restriction limited to 4-17 May. These concessions make the remaining omissions more defensible. | | | | | | | |

| ID | Category | Document / Record | Date | Form / Type | Personal Record Location | NPRC Personnel Status | NPRC Medical Status | ADB Status | Comparative Status | BCNR Lane | Lane Basis / Sorter | Proof of Contemporaneous Existence |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| R-001 | Custodial / Discipline | Punitive restriction order and schedule | 1992-05-04 | Command restriction order | Restriction Orders 05041992_0001.pdf | Not located in 73-page personnel production | N/A | Not located in preserved ADB packet | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Signed contemporaneous order; detailed schedule and restrictions |
| R-002 | Custodial / Discipline | Restriction muster sheets | 1992-05-04 to 1992-05-17 | Daily accountability record | Not yet identified in personal scans | Not located | N/A | Not located | Required source document absent | TBD | Receipted BCNR transmittal index must determine whether this was before the Board | Restriction order requires repeated musters and accountability |
| R-003 | Custodial / Discipline | Restriction checkout / movement log | 1992-05-04 to 1992-05-17 | Control log | Not yet identified | Not located | N/A | Not located | Required source document absent | TBD | Receipted BCNR transmittal index must determine whether this was before the Board | Restriction order references controlled movement/check-in/check-out |
| R-004 | Personnel / Assignment | History-of-Assignment ledger and underlying duty-station orders | 1990-1992 | NAVPERS 1070/605 | Multiple transfer, reporting, PCS and billet documents in personal archive | 1070/605 ledger pages present; underlying orders class incomplete/absent | N/A | Partial references only | Partial match | TBD | Receipted BCNR transmittal index must determine whether this was before the Board | Produced 1070/605 ledger entries identify assignments and transfers that necessarily arose from orders |
| R-005 | Personnel / Assignment | Transfer order to NAS Miramar / VF-1 | 1991 | PCS / transfer order | 1992 Legal prep records 1992_0002.pdf | Not identified in current NPRC excerpts | N/A | Not expected | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Official order with reporting destination and transferred records |
| R-006 | Personnel / Assignment | Transfer to TPU pending separation | 1992-07-21 | Transfer order | 1992 Pre Discharge Records 1992_0001.pdf | Partial/unknown | N/A | May be referenced | Different version / personal copy | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Original order and separate detaching endorsement |
| R-007 | Personnel / Pay | Detaching endorsement to TPU transfer order | 1992-07-29 | Detaching endorsement | 1992 Pre Discharge Records 1992_0002.pdf | Not yet matched | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Fragile original page scanned separately |
| R-008 | Personnel / Pay | Return to full-duty status for pay purposes | 1992-09-02 | TPU/pay status document | 1992 Legal prep records 1992_0001.pdf | Not yet matched | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Dated official TPU document |
| R-009 | Defense Evidence | Defense Exhibits A and B | 1992-07-25 | ADB exhibits | Personal archive contains favorable evaluation and related defense materials | Referenced as admitted, but complete exhibits not located | N/A | Transcript states Exhibits A and B admitted; exhibits absent from surviving packet | Admitted exhibit absent | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Board transcript expressly records offer and admission |
| R-010 | Defense Evidence | Character witness statements / NLSO forms | 1992 | NLSO character witness forms | Character witness statements 1992(2).pdf and legal prep records | Not located in NPRC personnel production | N/A | Not located as complete forms | Personal copy only / potentially admitted or supporting documents | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Contemporaneous standardized legal-service forms with signatures |
| R-011 | Defense Evidence | Witness list with defense counsel handwritten assessments | 1992 | Counsel working document / witness list | Personal paper archive, scanned within packets if present | Not located | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Original witness list with contemporaneous counsel annotations |
| R-012 | Defense Evidence | Defense discovery request | 1992 | Discovery request | Personal paper archive | Not located | N/A | Not located | Referenced / personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Contemporaneous legal document |
| R-013 | ADB Procedure | Counsel memorandum summarizing witnesses, objections and strategy | 1992 | Defense counsel memorandum | 1992 Pre Discharge Records 1992_0003.pdf | Not located | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Contemporaneous counsel document |
| R-014 | ADB Procedure | ADB transcript / record of proceedings | 1992-07-25 | Record of ADB proceedings | Personal copies in pre-discharge packet | Present in NPRC/ADB packet | N/A | Present | Different version / internal inconsistency | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Multiple contemporaneous copies |
| R-015 | ADB Procedure | Command forwarding letter and enclosure inventory | 1992-08-01 | Command transmittal | 1992 Pre Discharge Records 1992_0004.pdf | Present in NPRC ADB/separation production | N/A | Referenced | Complete match / anchor document | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Official signed transmittal |
| R-016 | ADB Procedure | Copies of supporting documents listed as enclosure (6) | 1992-08-01 | Enclosure category | Many personal records appear to be supporting documents | Only a subset survives | N/A | Subset survives | Referenced but incomplete | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Command transmittal expressly lists copies of supporting documents |
| R-017 | Performance | Regular evaluation recommending retention | 1991-05-31 to 1992-01-31 | Enlisted Performance Evaluation | 1992 Pre Discharge Records 1992_0005.pdf | Partial/present status to verify | N/A | May have been Exhibit A | Different version / potentially admitted exhibit | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Signed evaluation; member acknowledgement |
| R-018 | Performance | Billet assignment record | 1991 | Command billet assignment form | 1992 Legal prep records 1992_0003.pdf | Not located as complete set | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Signed/dated command records |
| R-019 | Performance | Tool Control Representative designation | 1991 | Designation letter / billet | 1992 Legal prep records 1992_0003.pdf | Not located | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Official designation and duties |
| R-020 | Performance | FOD Control Petty Officer designation | 1991 | Billet designation | 1992 Legal prep records 1992_0003.pdf | Not located | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Official duties document |
| R-021 | Performance | Publications / Supply / IMRL-PME responsibilities | 1991 | Billet designations | 1992 Legal prep records 1992_0003.pdf | Not located as complete records | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Multiple contemporaneous command forms |
| R-022 | Performance | Ordnance OJT and certification records | 1991-1992 | Ordnance qualification records | 1992 Legal prep records 1992_0003.pdf | Not located | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Repeated supervisor initials, tasks and certification levels |
| R-023 | Medical / Crisis | Ambulance / emergency-room records following suicidal ingestion | 1992-05-17 | Emergency care record | 1992 Pre Discharge Records 1992_0004.pdf / Part 6 | Unknown/partial | Found in the 166-page medical production | Referenced in ADB testimony | Complete or near-complete match | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Contemporaneous medical record and testimony |
| R-024 | Medical / Crisis | May 18 psychiatric consultation | 1992-05-18 | SF 513 consultation | 1992 Pre Discharge Records 1992_0006.pdf | Not personnel | Present/partial in medical record | Referenced in proceedings | Partial match / source record | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Dated consultation signed by Navy clinician |
| R-025 | Medical / Duty Status | Light-duty / return-to-barracks disposition | 1992-05-18 | Medical duty disposition | Psychiatric consultation in Part 6 | Not personnel | Present/partial | Referenced indirectly | Partial match | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Same-page clinician disposition |
| R-026 | Medical / Custody | Hospital discharge or release record | 1992-05-17/18 | Hospital release/disposition | Not yet identified as complete standalone document | Not located | Not located as complete release instrument | Not located | Required source document absent | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Emergency/psychiatric records and third-party pickup statement imply release/custody event |
| R-027 | Medical / Treatment | Alcohol dependency screening | 1992 | Dependency evaluation form | 1992 Pre Discharge Records Parts 4 and 6 | Not personnel | Present/partial in medical record | Admitted as government Exhibit 21 | Different version / incomplete clinical predicate | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Official screening form; board transcript identifies objection to admin-separation selection |
| R-028 | Medical / Treatment | Dependency screening second page / amenability determination | 1992 | Continuation page | Counsel memorandum says Recorder was required to submit second page | Not located | Not located/uncertain | Not located | Referenced but absent | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Contemporaneous counsel memorandum |
| R-029 | Medical / Treatment | Treatment referral / CAAC appointment record | 1992 | Referral or appointment | Personal records contain screening context | Not located | Unknown | Testimony says screening delayed/backlogged | Referenced but absent | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Witness testimony and screening form |
| R-030 | Counseling / Predicate | Page 13 counseling-warning entry | 1992 | NAVPERS 1070/613 | 1992 Pre Discharge Records Parts 5 and 6 | Present in personnel/ADB materials | N/A | Present | Complete or near-complete match | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Signed Page 13 |

| ID | Category | Document / Record | Date | Form / Type | Personal Record Location | NPRC Personnel Status | NPRC Medical Status | ADB Status | Comparative Status | BCNR Lane | Lane Basis / Sorter | Proof of Contemporaneous Existence |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| R-031 | Governing Authority | MILPERSMAN counseling and rehabilitation requirements | 1992 edition | MILPERSMAN | Personal pre-discharge packets contain copied pages | Not expected in OMPF | N/A | May have been supporting material | Governing authority omitted / privately preserved | TBD | Receipted BCNR transmittal index must determine whether this was before the Board | Contemporaneous copied manual pages |
| R-032 | Governing Authority | Article 92 elements and punishment limitation | 1992 MCM | Manual for Courts-Martial | 1992 Pre Discharge Records Part 6 | Not expected in OMPF | N/A | Supporting legal material | Governing authority omitted / privately preserved | TBD | Receipted BCNR transmittal index must determine whether this was before the Board | Contemporaneous manual copy |
| R-033 | Governing Authority | Article 87 elements and proof requirements | 1992 MCM | Manual for Courts-Martial | 1992 Pre Discharge Records Part 6 | Not expected in OMPF | N/A | Supporting legal material | Governing authority omitted / privately preserved | TBD | Receipted BCNR transmittal index must determine whether this was before the Board | Contemporaneous manual copy |
| R-034 | TPU / Custody | Post-board TPU assignment order and authority | 1992-07-21 to 1992-07-29 | Transfer/assignment order | Personal archive contains transfer order and possibly original TPU order | Partial/unknown | N/A | Not located | Partial match / required source record | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Official transfer document and personal original |
| R-035 | TPU / Conditions | August 28 voluntary statement regarding TPU conditions | 1992-08-28 | OPNAV voluntary statement | Voluntary Statement of Cruel and Unusual Punishment 08-28-1992(3).pdf | Not located | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Signed contemporaneous Navy form |
| R-036 | Record Integrity | Enlisted Service Record Verification checklist | 1992 | Service-record verification checklist | 1992 Pre Discharge Records Part 4 | Not located as complete form | N/A | Not expected | Personal copy only | Frizelle | Preliminary: appears in, is referenced by, or was part of the record before the Board; confirm against receipted BCNR transmittal index | Official Navy checklist |
| R-037 | Record Integrity | Respondent Privacy Act statement | 1992 | ADB respondent statement | 1992 Pre Discharge Records Part 5 | Not located | N/A | Not located | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Official form states supplied information becomes permanent part of proceedings |
| R-038 | Record Integrity | Personal-record custody transfer language | 1991 transfer | Transfer directive | 1992 Legal prep records Part 2 | Not located/partial | N/A | Not expected | Personal copy only | New Matter | Preliminary: personal/source record not shown in Board submission; use as § 1552 reconsideration key unless transmittal index proves otherwise | Official transfer document states service, pay, medical and dental records delivered to gaining command |
| R-039 | Record Integrity | NMPC received-stamp gap and missing-page arithmetic | 1992-08 | Received-stamp / pagination analysis | Pre-discharge packet and NMPC-stamped production | Page ranges reveal approximately 30 missing pages | N/A | Gap includes admitted defense exhibits and specifications continuation sheet | Referenced but absent | Frizelle | Government-stamped administrative record defect; confirm it was included or inferable in the Board submission from the receipted index | NMPC stamp sequence, pagination ranges, transcript admissions and continuation references |
| R-040 | Record Integrity | Supplemental S-fiche indexed as 'Misconduct' | 1992 | Supplemental microfiche index entry | Index/reference found in produced record | Named supplemental fiche not produced/pulled | N/A | Potentially contains misconduct/separation source records | Referenced but absent | New Matter | Named unpulled repository record supports a targeted § 1552 records request unless the BCNR transmittal index shows it was before the Board | Official index entry naming supplemental S-fiche and subject 'Misconduct' |
| R-041 | Medical / Treatment | Alcohol/dependency screening date | 1992-05-13 | Medical screening entry | Pre-discharge medical packet | Referenced in command/board materials | Present or derivable; exact page to map | Government Exhibit 21 / treatment chronology | Partial match | Frizelle | Government medical/board record predating the Board; confirm inclusion in the receipted submission | Dated screening form |
| R-042 | Medical / Treatment | Truck-incident ER entry with treatment recommendation | 1992-03-07 | Emergency-room / medical entry | Personal medical/service packet if duplicated | Referenced by later command chronology | Found in medical production | Alcohol/treatment history | Complete or near-complete match | Frizelle | Government medical record available before the Board and BCNR; confirm cited page in transmittal index | Dated ER entry |
| R-043 | Medical / Qualification | Divefarer qualification: 'QUALIFIED FOR DIVING DUTY' | 1992-01 | Diving-duty medical qualification | Personal archive and/or government medical record | Program history may be present | Found in government file | Not clearly addressed | Complete match / government anchor | Frizelle | Government medical record bearing directly on the AO's pre-existing-condition premise | Signed qualification entry |
| R-044 | Medical / Qualification | Physical-training disqualification after diving qualification | 1992-02 | Medical/PT restriction or disqualification | Personal archive and/or government medical record | Duty consequences may be summarized | Found in government file | Not reconciled with personality-disorder premise | Complete match / government anchor | Frizelle | Government medical record before the Board: confirm Board-submission page | Dated medical restriction/disqualification |
| R-045 | Medical / Crisis | Full psychiatric-note transcription and internal factual conflicts | 1992-05-18 | Psychiatric consultation / transcription | Pre-discharge Part 6 and personal transcription | Summarized in board/separation materials | Original note present but difficult to read | Diagnosis and crisis narrative used | Partial match / enriched transcription | Frizelle | Underlying government note was in the record; transcription exposes content the Board did not address | Original signed psychiatric note |
| R-046 | Separation Authority | BUPERS 271841Z separation message | 1992 | BUPERS message, four pages | Personal pre-discharge packet if duplicated | Found, four pages; includes 'MISC-PATTERN/OTH/GKA' | N/A | Post-board separation authority | Complete match / removed from missing list | Frizelle | Government separation message was part of the official record | Four-page produced message |

| ID | Category | Document / Record | Required / Expected Record Basis | What Government Record Preserves | Missing / Variance | Issue / Predicate | Material Significance | APA / Record-Review Significance | Confidence | Verification Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| R-001 | Custodial / Discipline | Punitive restriction order and schedule | Official punishment and custodial-control instrument | NJP summary states 14 days restriction | Underlying order, movement controls, residence requirement, muster schedule, escort/check-out structure | May 16 Article 86 / duty-location predicate | Establishes command-controlled location through 0800 May 17 and tests whether a separate muster obligation existed | High: adverse conclusion retained while source instrument governing location is absent | High | Page-level negative verification still required |
| R-002 | Custodial / Discipline | Restriction muster sheets | Operational record naturally generated by restriction regime | Only UA conclusion and punishment summaries | No muster sheet showing presence/absence at M-297 or transfer of muster responsibility | May 16 Article 86 | Could directly establish whether Harper missed a restriction muster or was accountable elsewhere | High if record required/generated; current status should be pleaded as absence, not intentional removal | Medium | Confirm retention rule and complete negative search |
| R-003 | Custodial / Discipline | Restriction checkout / movement log | Operational record supporting custodial control | Adverse UA/NJP conclusion | No authorization or log entry showing release for a separate VF-1 muster | May 16 Article 86 | Necessary bridge between command-controlled restriction and alleged absence from another appointed place | High | Medium | Confirm exact language in restriction order and retention practice |
| R-004 | Personnel / Assignment | History-of-Assignment ledger and underlying duty-station orders | Formal assignment ledger is preserved; source orders are core personnel instruments | Assignment ledger dates, including TPU transfer chronology | Underlying PCS, transfer, reporting and duty-station orders supporting ledger entries | Foundational to Articles 86/87 and who exercised authority at each date | DOJ-proof formulation: the duty chain is not wholly absent; the produced ledger proves the missing orders existed | High: source-order class is incomplete while derivative ledger survives | High | Map every ledger entry to a corresponding personal order and identify unmatched source orders |
| R-005 | Personnel / Assignment | Transfer order to NAS Miramar / VF-1 | Core personnel instrument | General assignment references may survive | Full order, reporting deadline, custody language for service/pay/medical/dental records | Duty-station chain and record custody | Shows formal transfer and that multiple official record systems were delivered to gaining command | High | High | Exact page crosswalk pending |
| R-006 | Personnel / Assignment | Transfer to TPU pending separation | Official transfer and temporary-duty instrument | TPU status and separation processing | Complete order and fragile endorsement details may not survive together | TPU authority, custody and pay status | Establishes legal basis and timing of transfer out of VF-1 | High | High | Compare against both NPRC personnel PDFs page by page |
| R-007 | Personnel / Pay | Detaching endorsement to TPU transfer order | Official endorsement to transfer order | General separation chronology | Detachment date, UIC, allotment/pay fields | TPU and pay chronology | May resolve when command authority and pay status changed | Medium-High | High | Exact comparison pending |
| R-008 | Personnel / Pay | Return to full-duty status for pay purposes | Official pay/personnel status action | Earlier punishment summaries | Later implementation/modification of pay status | NJP execution and separation pay chronology | May show sentence summary does not accurately reflect actual execution | Medium-High | Medium-High | Needs exact comparison with NJP and pay ledger |
| R-009 | Defense Evidence | Defense Exhibits A and B | Permanent record of proceedings / admitted evidence | Admission notation | Actual exhibits and their full contents | Defense presentation, retention potential and characterization | Direct record-completeness defect because admitted evidence is acknowledged but not preserved | Very High | High | Identify exact exhibit identities from counsel file and markings |
| R-010 | Defense Evidence | Character witness statements / NLSO forms | Defense evidence prepared for official proceeding | Some favorable testimony summarized indirectly | Full written statements and recommendations for retention/general characterization | Characterization, rehabilitation potential, credibility | Shows favorable evidence existed contemporaneously and was not a later reconstruction | High | High | Determine which were offered, admitted, or forwarded |
| R-011 | Defense Evidence | Witness list with defense counsel handwritten assessments | May be defense file rather than permanent ADB record | No equivalent located | Counsel's contemporaneous assessment and witness alignment | Witness credibility and defense constraints | Useful provenance and impeachment aid; retention duty depends on whether filed or discovery material | Medium | Medium-High | Locate exact scan page and determine filing status |
| R-012 | Defense Evidence | Defense discovery request | Official proceeding material if served/filed | No equivalent located | Requested evidence and government's response/production | Record completeness and procedural fairness | May identify materials the government knew were sought before discharge | High if filing/service shown | Medium | Locate exact page, signatures and service proof |
| R-013 | ADB Procedure | Counsel memorandum summarizing witnesses, objections and strategy | Defense file; not necessarily permanent ADB record | Transcript and findings | Independent account that Recorder called Luters, Bradley and Ross; objections; constrained strategy | Witness alignment and fairness of proceeding | Creates internal conflict with transcript wording and explains defense posture | High | High | Compare memo, transcript sequence, oath order and witness list |
| R-014 | ADB Procedure | ADB transcript / record of proceedings | Mandatory proceeding record | Transcript and findings | Witness-calling language conflicts with counsel memorandum; admitted exhibits missing | Witness alignment, exhibit preservation and procedural accuracy | The preserved transcript may itself be unreliable or incomplete in material respects | Very High | High | Build line-by-line version comparison |
| R-015 | ADB Procedure | Command forwarding letter and enclosure inventory | Defines what command represented as forwarded | Enclosure list survives | Need to test whether each listed enclosure actually survives | Administrative record completeness | Provides government-created checklist for missing-record analysis | Very High | High | Crosswalk every enclosure and sub-enclosure |
| R-016 | ADB Procedure | Copies of supporting documents listed as enclosure (6) | Forwarded case materials | Adverse NJP, counseling and selected medical/administrative materials | Favorable, qualifying and source documents are incomplete | Entire separation case | Strongest structural basis for arguing incomplete administrative record | Very High | High | Create page-level enclosure reconstruction |
| R-017 | Performance | Regular evaluation recommending retention | Core performance record; board characterization input | Some performance data and adverse narrative | Full narrative: minimal supervision, eager to learn, capable, unlimited potential, retention recommended | No-potential testimony and OTH characterization | Directly contradicts categorical later narrative and may be an admitted missing exhibit | Very High | High | Confirm exact NPRC page and whether narrative side is present |
| R-018 | Performance | Billet assignment record | Command work-center and qualification records | General assignment to VF-1 | Specific entrusted collateral duties | Service quality and retention potential | Shows contemporaneous allocation of operational trust | High | High | Inventory each billet as separate sub-row |
| R-019 | Performance | Tool Control Representative designation | Safety/accountability command record | No equivalent identified | Safety-critical tool-control responsibilities | Reliability and service potential | Contradicts simplified claim of universal unreliability | High | High | Exact date/page pending |
| R-020 | Performance | FOD Control Petty Officer designation | Safety and maintenance program record | No equivalent identified | Aircraft-safety and work-area inspection responsibility | Reliability and operational trust | Material characterization evidence | High | High | Exact date/page pending |
| R-021 | Performance | Publications / Supply / IMRL-PME responsibilities | Work-center accountability records | No equivalent identified | Technical library, supply tracking, calibrated equipment and inventory custody | Service quality and retention potential | Cumulative proof of sustained entrusted responsibility | High | High | Separate into individual rows in final forensic pass |
| R-022 | Performance | Ordnance OJT and certification records | Qualification and safety record | No equivalent identified | Explosive-device handling qualifications | Reliability, technical competence and trust | Strong rebuttal to 'no useful service potential' | High | High | Map every certification page |
| R-023 | Medical / Crisis | Ambulance / emergency-room records following suicidal ingestion | Mandatory active-duty medical incident record | Ambulance and ER encounter documentation | No longer listed as missing; compare completeness and legibility only | Article 87, mental-health mitigation and chronology | Defines crisis timing and treatment context | Correction against overclaim; use as government-record anchor for the crisis chronology | High | Record exact NPRC page range and compare to personal copy |
| R-024 | Medical / Crisis | May 18 psychiatric consultation | Mandatory medical record | Diagnosis and disposition may survive | Exact legibility, full disposition and linkage to duty status require comparison | Article 87 and mental-health analysis | Places Harper ashore under Navy medical evaluation/disposition on movement date | Very High | High | Compare images, not OCR alone |
| R-025 | Medical / Duty Status | Light-duty / return-to-barracks disposition | Medical duty-status record | Some consultation text | Any post-medical duty order, ship reporting direction or superseding instrument | Article 87 required-duty element | Tests whether duty required movement with ship after medical disposition | Very High | High | Extract exact handwriting from rendered page |
| R-026 | Medical / Custody | Hospital discharge or release record | Medical encounter disposition record | Downstream testimony and consultation | Time and terms of release, custody transfer, duty instructions | Article 87 movement timing and location | Essential missing bridge between hospitalization and alleged missed movement | High | Medium-High | Confirm whether embedded on emergency-care form |
| R-027 | Medical / Treatment | Alcohol dependency screening | Medical evaluation and submitted board evidence | Administrative-separation recommendation is visible | Diagnosis, dependent/nondependent selection, amenability and treatment-level determination unclear or incomplete | Treatment failure and characterization | Form preserves administrative outcome more clearly than clinical predicate | Very High | High | Compare all copies and identify missing second page |
| R-028 | Medical / Treatment | Dependency screening second page / amenability determination | Required completion/supporting page if part of Exhibit 21 | First-page administrative recommendation | Second page, clinical rationale, treatment eligibility and amenability | Treatment failure and validity of Exhibit 21 | Could show the board received an incomplete government exhibit | Very High | Medium-High | Locate exact counsel memo language and exhaustive search |
| R-029 | Medical / Treatment | Treatment referral / CAAC appointment record | Clinical referral and scheduling record | Command claim of ample counseling | Actual referral date, delay, attendance and offered treatment | Whether reasonable assistance was provided | Directly tests regulatory counseling/rehabilitation predicate | High | Medium | Search medical and personnel productions for CAAC/NADSAP |
| R-030 | Counseling / Predicate | Page 13 counseling-warning entry | Regulatory prerequisite for pattern processing | Warning language survives | Whether handwritten recommendations identify available assistance and provide reasonable corrective opportunity | Pattern-of-misconduct processing predicate | Even a preserved document may fail the substantive regulation | Very High | High | Transcribe handwriting and measure time to next action |

| ID | Category | Document / Record | Required / Expected Record Basis | What Government Record Preserves | Missing / Variance | Issue / Predicate | Material Significance | APA / Record-Review Significance | Confidence | Verification Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| R-031 | Governing Authority | MILPERSMAN counseling and rehabilitation requirements | Governing standard rather than personal record | Authority citations survive | Operative text requiring notice, specific recommendations, available assistance and reasonable opportunity | Pattern-processing legality | Allows source documents to be tested against the actual rule | High | High | Verify edition and effective date |
| R-032 | Governing Authority | Article 92 elements and punishment limitation | Governing law | Article 92 labels and findings survive | Limitation where same facts constitute another specific offense or breach of restraint | Duplicate Article 86/92 specifications and serious-offense predicate | May defeat use of generic maximum punishment to elevate punctuality events | Very High | High | Counsel to confirm legal effect and preserved charge language |
| R-033 | Governing Authority | Article 87 elements and proof requirements | Governing law | Article 87 finding survives | Required duty to move, actual knowledge, actual movement, design/neglect and proof of absence | Missing movement finding | Creates a document-by-document checklist of missing factual predicates | Very High | High | Crosswalk each element to preserved evidence |
| R-034 | TPU / Custody | Post-board TPU assignment order and authority | Personnel/custody instrument | Order dated 21 July and detachment endorsement dated 29 July | Full authority, purpose, duration, review and conditions may remain incomplete | Post-board TPU custody, not May restriction | Corrects chronology: M-297 restriction ran 4-17 May; beach det followed; TPU was post-board. The 58-days-post-board argument survives on government instruments. | High | High | Remove every 'May-September confinement' formulation from Rev. 70/74 and related drafts |
| R-035 | TPU / Conditions | August 28 voluntary statement regarding TPU conditions | Contemporaneous complaint/statement; retention category to verify | No equivalent identified | Medical, food, transport, paperwork-loss and discipline-barracks allegations and any command response | TPU conditions and notice to command | Shows contemporaneous notice, not later recollection | High | High | Determine routing, recipient and response records |
| R-036 | Record Integrity | Enlisted Service Record Verification checklist | Defines formal service-record components | Some listed categories survive | History of Assignment, evaluations, court memoranda, admin remarks and other required categories are incomplete | Record preservation and completeness | Government's own checklist supplies objective benchmark for missing categories | Very High | High | Transcribe all checklist items and mark each present/absent |
| R-037 | Record Integrity | Respondent Privacy Act statement | Board record requirement | No equivalent identified | Respondent-provided background/materials that should have become permanent record | Defense evidence preservation | Express preservation language supports missing-proceeding-record claim | Very High | High | Identify associated respondent information pages |
| R-038 | Record Integrity | Personal-record custody transfer language | Custody and routing evidence | Later fragments of each record system | Complete continuity and later loss/omission | Government custody of record systems | Rebuts suggestion that missing records may never have existed or entered official custody | High | High | Quote exact custody language and page |
| R-039 | Record Integrity | NMPC received-stamp gap and missing-page arithmetic | Processed separation case and admitted exhibits were forwarded as a bounded record | Beginning/end ranges, selected stamped pages, transcript references | Approximately 30 pages by range, including admitted defense exhibits and specifications continuation sheet | Administrative record completeness / defense evidence / charge specifications | Hard numerical center of the claim that only a subset of the forwarded case survives | Very High: objective page-range arithmetic replaces generalized suspicion | High | Build exact missing-range table with first/last surviving stamp for each gap |
| R-040 | Record Integrity | Supplemental S-fiche indexed as 'Misconduct' | Officially indexed supplemental record | Index reference only | Underlying fiche contents | Completeness of misconduct and separation record | Converts an unknown gap into a specifically named records request | High as a record-completeness lead; potentially Very High after production | High | Request by fiche identifier, index label, UIC and date range |
| R-041 | Medical / Treatment | Alcohol/dependency screening date | Medical treatment and administrative-board evidence | Screening form and administrative-separation notation | Clinical completion, amenability, second page and treatment implementation | Treatment timing and command claim of ample counseling | Fixes the screening before the May 17 crisis and May 18 movement date | Very High: sharpens chronology and tests whether treatment was recommended but not delivered | High | Use 13 May consistently throughout matrix and Rev. 70/74 |
| R-042 | Medical / Treatment | Truck-incident ER entry with treatment recommendation | Mandatory active-duty medical incident record | Incident and recommendation for treatment | No corresponding proof that recommended treatment was delivered | Treatment failure / causation / rehabilitation | Documents early recognition and recommended intervention months before separation | Very High: directly rebuts 'ample counseling/no further treatment warranted' | High | Map recommendation language and search for implementation records |
| R-043 | Medical / Qualification | Divefarer qualification: 'QUALIFIED FOR DIVING DUTY' | Medical fitness determination | Entry screening passed and diving duty qualification | No reconciliation with later lifelong/pre-existing characterization | Pre-existing personality/characterological premise | Shows contemporaneous medical fitness for demanding diving duty shortly before decline | Very High: government file contradicts an unexamined lifelong-premise narrative | High | Record exact date, provider and page |
| R-044 | Medical / Qualification | Physical-training disqualification after diving qualification | Medical fitness and duty-status record | Rapid change from qualified diving duty to PT disqualification | No reasoned reconciliation with characterological explanation | Physical injury, functional decline and causation | Supports an entry-screening-passed, later-physical-decline chronology rather than lifelong defect | Very High when paired with R-043 | High | Pair visually and chronologically with R-043 |
| R-045 | Medical / Crisis | Full psychiatric-note transcription and internal factual conflicts | Medical record and relied-upon separation evidence | Diagnosis, disposition and narrative fragments | Second-sailor sentence; conflicting 2-beer/6-beer/0.04 EtOH accounts; full context not reflected in downstream summaries | Credibility, diagnosis, causation, Article 87 and selective summary | Shows internal inconsistency within the government's own account and potentially corroborating context involving another sailor | Very High: supports failure to reconcile material contradictions | Medium-High | Create image-verified diplomatic transcription with uncertain characters bracketed |
| R-046 | Separation Authority | BUPERS 271841Z separation message | Final separation-processing instrument | Message and characterization coding | No longer missing; analyze coding and consistency only | Final authority and characterization | Correction in government's favor strengthens credibility of the remaining missing-record claims | Methodological anchor, not an omission claim | High | Remove from every missing-document list |

| Priority | Matrix ID | Record / Document | Why Official or Required | Government Anchor | Present Production Defect | Affected Issue | BCNR Lane | Next Verification Step |
|---|---|---|---|---|---|---|---|---|
| Critical | R-039 | NMPC stamp-gap arithmetic | Forwarded case has bounded stamped/page ranges | NMPC received stamps, transcript admissions, continuation references | Approximately 30 pages missing by range | Administrative record / defense exhibits / specifications | Frizelle | Build exact range-by-range gap schedule |
| Critical | R-009 | Defense Exhibits A and B | Transcript expressly says admitted | ADB transcript | Exhibits absent from surviving packet | Defense presentation / characterization | Frizelle | Identify exhibit labels and match to personal copies |
| Critical | R-016 | Supporting documents, enclosure (6) | Command transmittal says supporting documents were forwarded | Aug. 1 forwarding letter | Only subset survives | Entire administrative record | Frizelle | Reconstruct every supporting document |
| Critical | R-028 | Dependency screening second page | Counsel memo states required second page | Counsel memorandum / Exhibit 21 | Clinical rationale and amenability page absent | Treatment failure | New Matter | Search all copies and request missing continuation |
| Critical | R-026 | Hospital release / duty bridge | Medical encounter required disposition and Article 87 required duty proof | ER, psych note, pickup statement | Release/custody/post-medical duty instrument not located | Article 87 | New Matter | Inspect medical corpus image by image |
| Critical | R-004 | Underlying duty-station orders | Produced ledger proves assignments arose from orders | 1070/605 ledger | Source orders class incomplete | Articles 86/87 | TBD | Map each ledger line to an order and BCNR index |
| High | R-040 | Supplemental S-fiche 'Misconduct' | Official index names a separate record | Microfiche index entry | Underlying fiche not produced | Record completeness | New Matter | Submit targeted records request |
| High | R-037 | Respondent permanent-record materials | Privacy statement says information becomes permanent part of proceedings | Official Privacy Act form | Associated respondent materials incomplete | Defense evidence | New Matter | Identify every associated page |
| High | R-034 | Post-board TPU authority | Formal transfer/custody instruments | 21 July order; 29 July detachment | Purpose/duration/review incomplete | TPU | New Matter | Complete TPU instrument inventory |

| Issue | Matrix IDs | Documentary Theory | Priority | BCNR Vehicle |
|---|---|---|---|---|
| May 16 Article 86 | R-001, R-002, R-003, R-004 | Restriction controlled location; source duty orders and muster bridge incomplete | **Critical** | TBD / New Matter |
| Article 87 Missing Movement | R-004, R-024, R-025, R-026, R-033, R-045 | Medical disposition and movement-element bridge incomplete; psych note contains internal conflicts | **Critical** | Frizelle + New Matter |
| Article 92 Duplication | R-030, R-031, R-032, R-039 | Regulatory limitation plus missing specifications continuation sheet | **Critical** | Frizelle |
| Treatment Failure | R-027, R-028, R-029, R-041, R-042 | 13 May screening, 7 March recommendation and incomplete amenability/treatment chain | **Critical** | Frizelle + New Matter |
| Defense Exhibit Preservation | R-009, R-010, R-011, R-012, R-013, R-014, R-037, R-039 | Admitted and contemporaneous defense materials fall within objective NMPC page gaps | **Critical** | Frizelle + New Matter |
| Characterization / Entire Service | R-017-R-022, R-043, R-044 | Entrusted duties and qualification/disqualification chronology contradict simplified lifelong-defect narrative | High | Frizelle + New Matter |
| TPU Authority and Conditions | R-006, R-007, R-034, R-035 | Correct post-board chronology; 58-day argument remains | High | New Matter |
| Administrative Record Integrity | R-015, R-016, R-036, R-038, R-039, R-040 | Government inventories, stamp gaps and named fiche identify specific missing record classes | **Critical** | Frizelle + New Matter |

| Source Group | File Name | Pages | Custodian / Origin | Primary Content |
|---|---|---|---|---|
| NPRC Personnel Record | NPRC_FOIA_1_0001(1).pdf | 73 | Government production | Personnel/service record |
| NPRC ADB/Separation Record | NPRC_FOIA_2_0001(1).pdf | | Government production | Administrative discharge materials |
| NPRC Medical Record | NPRC_FOIA_3_Med1_0001(1).pdf | 166 | Government production | Medical/dental record |
| ADB Packet | Admin Discharge Board 1992(2).pdf | 49 | Government production / separate packet | Board proceeding |
| Personal Pre-Discharge Part 1 | 1992 Pre Discharge Records 1992_0001.pdf | 74 | Personal archive | Pre-discharge service/legal packet |
| Personal Pre-Discharge Part 2 | 1992 Pre Discharge Records 1992_0002.pdf | 1 | Personal archive | Fragile detached continuation page |
| Personal Pre-Discharge Part 3 | 1992 Pre Discharge Records 1992_0003.pdf | 68 | Personal archive | Notice, rules, counsel materials |
| Personal Pre-Discharge Part 4 | 1992 Pre Discharge Records 1992_0004.pdf | 78 | Personal archive | Medical, board, forwarding materials |
| Personal Pre-Discharge Part 5 | 1992 Pre Discharge Records 1992_0005.pdf | 60 | Personal archive | Evaluations, counseling, rules |
| Personal Pre-Discharge Part 6 | 1992 Pre Discharge Records 1992_0006.pdf | 38 | Personal archive | Medical, notice, offense elements |
| Personal Legal Prep Part 1 | 1992 Legal prep records 1992_0001.pdf | 82 | Personal archive | Legal preparation and witness materials |
| Personal Legal Prep Part 2 | 1992 Legal prep records 1992_0002.pdf | 84 | Personal archive | Transfer and service documents |
| Personal Legal Prep Part 3 | 1992 Legal prep records 1992_0003.pdf | 36 | Personal archive | Billets, qualifications, entrusted duties |
| Restriction Order | Restriction Orders 05041992_0001.pdf | 3 | Personal archive | Punitive restriction order and schedule |
| Character Witness Statements | Character witness statements 1992(2).pdf | 8 | Personal archive | Contemporaneous defense witness statements |
| TPU Statement | Voluntary Statement of Cruel and Unusual Punishment 08-28-1992(3).pdf | 2 | Personal archive | Contemporaneous TPU conditions statement |

| Term | Definition |
|---|---|
| Complete match | Same material document appears complete in both corpora. |
| Partial match | Document exists in both, but one copy is truncated, missing pages, less legible, or materially different. |
| Personal copy only | Located in personal archive; not yet located in current government production. |
| Referenced but absent | A surviving official document expressly cites, admits, encloses, requires, or summarizes another record that is not present. |
| Admitted exhibit absent | Proceeding record states exhibit was admitted, but the exhibit is absent from the surviving packet. |
| Required source document absent | The adverse conclusion survives, but the official source instrument needed to establish or test it is not located. |
| Downstream summary only | Government retains a summary, finding, or conclusion but not the underlying source record. |
| Governing authority omitted | Manual or rule text is not itself expected in the OMPF; it is used to test compliance, not counted as a missing personnel record. |
| Directional incompleteness | Observed preservation pattern retains adverse conclusions while omitting or truncating records that test, qualify, or contradict them. This describes effect, not proven intent. |
| Verification rule | Use 'not located in the production' until a complete page-level negative search is finished. Do not convert absence into an accusation of intentional removal without evidence. |
| Frizelle | Preliminary lane for material shown by the receipted BCNR transmittal index to have been before the Board but materially unaddressed. |
| New Matter | Preliminary lane for evidence not before the Board, usable as a § 1552 reconsideration key or targeted records-development item. |
| TBD | Lane cannot be assigned until the receipted BCNR transmittal index is reconciled. |
| Corrections in both directions | Documents found in government production must be removed from missing lists. The matrix is an audit, not an advocacy-only inventory. |

| Action | Affected Item | Corrected Fact | Why It Matters | Document Anchor | Draft Impact |
|---|---|---|---|---|---|
| Correct | R-004 | 1070/605 assignment ledger exists; underlying orders class is incomplete | Avoids overclaim and uses derivative ledger to prove source orders existed | Produced personnel record + personal orders | Reword all 'duty-station chain absent' language |
| Remove from missing list | R-046 | BUPERS 271841Z found, four pages, 'MISC-PATTERN/OTH/GKA' | Concession strengthens credibility | NPRC personnel production | Delete from all missing-record inventories |
| Remove from missing list | R-023 | Ambulance and ER records found in NPRC medical production | Concession strengthens credibility; retain chronology use | NPRC medical production | Do not call ER/ambulance documents missing |
| Correct chronology | R-034 | M-297 restriction 4-17 May; beach det between; TPU order 21 July and detachment 29 July | Eliminates inaccurate May-September confinement theory | Restriction order + TPU transfer instruments | Revise Rev. 70/74; preserve 58-days-post-board argument |
| Add anchor | R-039 | Approximately 30 NMPC-stamped pages missing by range | Objective numerical administrative-record defect | NMPC stamp sequence | Make hard center of R-016 analysis |
| Add anchor | R-040 | Supplemental S-fiche indexed as 'Misconduct' is unpulled | Creates named records request | Microfiche index | Add targeted request and reconsideration lane |
| Correct date | R-041 | Alcohol/dependency screening occurred 13 May 1992 | Sharpens pre-crisis treatment chronology | Dated screening form | Use 13 May consistently |
| Add anchor | R-042 | 7 March truck-incident ER entry recommended treatment | Shows early recognition and non-delivery | NPRC medical record | Add to treatment-failure section |
| Add paired anchor | R-043/R-044 | Qualified for diving duty in January; PT-disqualified in February | Entry screening passed; later physical decline, not self-proving lifelong defect | Government medical file | Aim at AO pre-existing premise |
| Add transcription | R-045 | Full psych note includes second-sailor sentence and 2/6 beers vs 0.04 EtOH conflict | Government's own narrative is internally inconsistent | Original psych note | Add image-verified transcription and contradiction table |
| Add strategy field | All rows | BCNR Lane: Frizelle / New Matter / TBD | Converts inventory into filing plan | Receipted BCNR transmittal index | Use index as controlling sorter |

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 6

## RESTRICTION ORDER AND SCHEDULE

Command instrument dated May 4, 1992 — offered on record completeness; not before the Board

PENALTY FOR PRIVATE USE TO AVOID PAYMENT OF POSTAGE ... COPIER ... TO THE NAVY ... GOVERNMENT EXPENSE

DEPARTMENT OF THE NAVY
FIGHTER SQUADRON ONE
FPO AP 96601-6100

1620
Ser 10/189
MAY 04 1992

Organization/Division Received From: Fighter Squadron ONE

ID Card collected

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

From: Commanding Officer, Fighter Squadron ONE
To: PRAA Osei A. Stevens, USN, [redacted]

Subj: PUNITIVE RESTRICTION NOTIFICATION

Ref: (a) COMFITAEWWINGPAC/NASMIRAMARINST 1620.13E

1. In accordance with reference (a), you are hereby placed in a restricted status for a period of 14 days, from 1400, 04 May 1992 to 0800, 17 May 1992, as a result of punishment pursuant to Nonjudicial Punishment (NJP) or court-martial conviction. Extra duties are to run concurrently with this period of restriction. You are directed to report to Naval Air Station Miramar Chief Master-At-Arms, Bldg. M-297, for berthing and work assignment.

2. You are prohibited from leaving the limits of Naval Air Station Miramar, except by written permission of the Commanding Officer, or his designated representative. You will live in the restricted barracks M-297 for the duration of your restriction period. You will be permitted to leave the restricted barrack during those hours when a check-in/check-out log is maintained. You are not entitled to liberty. In addition to being restricted to the limits of Naval Air Station Miramar, you are prohibited from entering the following specified areas:

a. Chief Petty Officers' Lounge

b. Petty Officers' Club (Jetstream)

c. Enlisted Club (Barrier)

d. Bowling Alley

e. Golf Range and Golf Course/Sandtrap

f. Mills Park

g. Any barracks other than restricted barracks (M-297)

h. The Great Escape

i. Consolidated Package Store

COPIER ★ DEPARTMENT OF THE NAVY GOVERNMENT EXPENSE

Subj: PUNITIVE RESTRICTION NOTIFICATION

j. Pizza Pizzazz

k. Navy Exchange Beverage Store

l. McDonald's

m. JetMart

n. All restricted spaces unless authorized

3. You will move into the restricted barracks (M-297) and will remain in your bunk between taps and reveille. Bunk checks will be made between the hours of 2200 and 0500 on weekdays and 2200 and 0600 on Saturdays, Sundays and holidays by the Duty Master-at-Arms. Personnel missing bunk checks will be charged with unauthorized absence/breaking restriction.

4. While restricted, you will comply with the daily schedule for restricted personnel:

Weekdays

0500 - Reveille, heave out and trice up
0600 - Muster at quarters, march to chow
0645 - Muster at quarters, assigned to base clean up
0800 - Muster at quarters, personnel and barracks inspection
0830 - Work assignments
1130 - Muster at quarters, march to chow
1230 - Muster at quarters, back to work
1600 - Knock off work
1630 - Muster at quarters, march to chow
1745 - Muster extra duty personnel (if assigned)
2000 - Muster, OOD's personnel inspection
2030 - Barracks, berthing clean up
2100 - Personal time (letters, laundry, etc.)
2200 - Taps

Saturdays, Sundays and Holidays

0600 - Reveille, heave out and trice up
0700 - Muster at quarters, march to chow
0800 - Assigned to base clean up
0900 - Muster at quarters, church call (as appropriate)
1130 - Muster at quarters, march to chow
1230 - Muster at quarters
1300-1630 - Free time
1630 - Muster at quarters, march to chow
1745 - Muster extra duty personnel (if assigned)
1830 - Muster at quarters
2000 - Muster, OOD's personnel inspection
2030 - Barrack clean up
2200 - Taps

COPIER GOVERNMENT EXPENSE ... OF THE NAVY

Subj: PUNITIVE RESTRICTION NOTIFICATION

5. You will make all musters in a clean working uniform with the exception of the 2000 Officer of the Day (OOD) inspection. Uniform for the OOD's inspection will be clean, complete and as directed by the CMAA.

6. You will be in military formation in front of Barracks M-297 immediately after the 0600, 1130 and 1630 musters and march to the mess hall, where you must occupy the area designated. Following meals, you will march back to Barracks M-297.

7. You will wear a complete clean dungaree uniform during performance of duties at all times between reveille and taps.

8. You will not possess or consume alcoholic beverages (including beer) at any place or time during the period of your restriction.

9. You will be clean shaven, will maintain a proper military haircut in accordance with Navy Uniform Regulations and will shower daily.

10. The possession or wearing of civilian clothing while in restriction is prohibited.

11. Violation of the orders as set forth herein shall result in further disciplinary action.

BRWoods

B. R. WOODS
By direction

I hereby acknowledge that I have read the above punitive restriction order and understand the duration of my restriction, the times for muster, limits of my restriction and the additional terms as set forth therein. I also understand that failure to comply with any portion of this restriction order will render me liable to charges in violation of the Uniform Code of Military Justice as may be warranted, including the possibility of a court-martial.

James D. Woodard
WITNESS

[signature]
RESTRICTEE

Copy to:
Member
Division

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 7

## VOLUNTARY STATEMENT

OPNAV 5527/2 (August 28, 1992) — contemporaneous record of lost paperwork and mistreatment

DEPARTMENT OF THE NAVY

# VOLUNTARY STATEMENT

2. DATE
28 Aug. 1992

I, PRAR Osei Stevens, make the following free and voluntary statement to CDR Hayes whom I know to be The Commanding Officer, TPU NavSta San Diego. I make this statement of my own free will and without any threats or promises extended to me. I fully understand that this statement is given concerning my knowledge of transferral to dry side TPU. My reasons for this request are are both legitimate and beneficial to all parties involved. First of all, my presence at discipline barracks TPU is detrimental both to my health and mental well being. Examples of how my health is jeapordized are as follows:

1) Due to medication prescribed to me, I am unable to sustain prolonged exposure to the sun. Compounded by the fact that the Transient Personnel Unit itself is short-handed, in manpower as well as in transportation. It is obviously not efficient in the broadest sense of the word to taxi me back and forth to chow or any of my various appointments. Thus I am forced to eat 'bag' meals which are marginal at best in nutritional value, augmented by the fact that I am unable to ensure I will recieve one at least twice a day, let alone three times a day. Effectivly I am on a starvation diet.

2) I have for some time now been afflicted with a defective knee, which, as of late has been causing an atrophying of my quadriceps among other major muscle groups. This affliction causes on occasion, my knee to "give out", giving me superficial, though painful damage. As this probably does not need stating, I will do so regardless. Prolonged walking is conclusivly not beneficial to my continued longevity on this plane. Thus I am on an all but permanent light duty status.

3) I am also unduely afflicted with asthma, which limits even further my ability to perform the way I'd like to. It also prevents me from doing the few jobs for which I do qualify, i.e. head detail due to the fumes.

4) In fault of the aforementioned afflictions, yet another has reard it's head, Trans-mandibular joint (TMJ) dislocation. To break it down simply, the cartilage which holds my jaw in place, has become mobile and has moved out of position, resulting in extreme pain and discomfort

On th issue of my mental well being there are several factors which need addressing. Some would consider this as a useless waste of time, but I beg of you hear me out. For people are good at saying how well they would handle a situation that they have never experianced before. So let me say my peace.

First and formost there is the concern about my phisical health. Will I get better?



OPNAV 5527/2 (12-82)

SN 0107-LF-055-2710

DEPARTMENT OF THE NAVY

# VOLUNTARY STATEMENT

CONTINUED

1. CASE

2. DATE 28 Aug. 1992

I, ______________________________, make the following free and voluntary statement to ______________________________, whom I know to be ______________________________.

I make this statement of my own free will and without any threats or promises extended to me. I fully understand ~~that this statement is given concerning my knowledge of~~

Or will I die of malnutrition? As is common knowledge hunger is a slow and painful process. These two factors alone have been known to drive men to the brink of insanity. Once that happens there is little chance of return. The effects are less than desireable.

Next there is the all to habitual loss of paperwork nescessary for expedious prosess-ing of pertinent information which is detrimental in itself without the fear of what will be lost next. As if matters are not bad enough, you get oppressive Masters At Arms, whose only goal in life is to stress those whom are rendered utterly defenseless by the system, until they are little more than hapless blobs of neurotic biomass, unable to function for themselves.

The final item that I speak of is the feeling of being in perpetual limbo, with out any idea of where you are going. You feel like a stage prop that only moves when moved. I am as a millionaire stripped of his wealth. Never knowing where to take the next step. Unable to cope with a life never before dealt with. The potential damage of such pondering need no explaining. With that I shall conclude.

Though the list goes on, I feel my case has been proven. I know to you this may seem to be a trivial matter, but at lower levels I have seen no satisfaction. Only contempt. So Ibring this matter to you requesting that you have mercy on a troubled soul. Thank you for your time.

----NO FURTHER ENTRIES----

OPNAV 5527/2 (12-82) SN 0107-LF-055 2710

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 8

## PERFORMANCE EVALUATIONS

Evaluations of January 31, 1992 and May 4, 1992

1616-1

# ENLISTED PERFORMANCE EVALUATION REPORT

| | | |
|---|---|---|
| 1 NAME (LAST, FIRST, MIDDLE OR MIDDLE INITIAL): STEVENS, OSEI A | 2 RATE: PRAA | 3 SSN: REDACTED |
| BRANCH/CLASS: 4 [X] USN 5 [ ] USNR | STATUS: 6 [X] ACTIVE 7 [ ] INACTIVE 8 [ ] TEMAC | 9 [ ] ACDUTRA |
| 10 MEMBER'S SHIP OR STATION: VF-1 | 11 MEMBER'S UIC: 09012 | 12 DATE REPORTED: 91JUN07 |
| OCCASION FOR REPORT: 13 [X] PERIODIC 14 [ ] TRANSFER 15 OTHER | PERIOD OF REPORT: 16 FROM 91MAY31 | 17 TO 92JAN31 |
| TYPE OF REPORT: 18 [X] REGULAR 19 [ ] CONCURRENT; 20 PHYSICAL READINESS: P/5 | 21 RESERVE PART | 22 DATE OF RATE: 91SEP16 |
| 23 REPORTING SENIOR'S NAME (LAST AND INITIALS): WILSON, R J; 24 RANK: LCDR | 25 TITLE: DEPT HEAD | 26 SSN: 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 |

| EVALUATION SECTION *REQUIRES COMMENT IN BLOCK 56 | NOT OBS | 4.0 | 3.8 | 3.6 | 3.4 | 3.2 | 3.0 | 2.8* | 2.6* | 2.0* | 1.0* |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PROFESSIONAL FACTORS: 27 MILITARY KNOWLEDGE/PERFORMANCE | | | | | X 1 | | | | | | |
| 28 RATING KNOWLEDGE/PERFORMANCE | | | | X 1 | | | | | | | |
| PERSONAL TRAITS: 29 INITIATIVE | | | | X 2 | | | | | | | |
| 30 RELIABILITY | | | | | X 2 | | | | | | |
| 31 MILITARY BEARING | | | | | X 3 | | | | | | |
| 32 PERSONAL BEHAVIOR | | | | X 5 | | | | | | | |
| 33 HUMAN RELATIONS INCL EQUAL OPPORTUNITY | | | | X 4 | | | | | | | |
| SELF EXPRESSION: 34 SPEAKING ABILITY | | | | X 5 | | | | | | | |
| 35 WRITING ABILITY | X | | | | | | | | | | |
| LEADERSHIP: 36 DIRECTING | X | | | | | | | | | | |
| 37 COUNSELING | X | | | | | | | | | | |
| 38 MANAGEMENT (E-7/8/9 ONLY, NOB FOR E-6 AND BELOW) | X | | | | | | | | | | |
| 39 OVERALL EVALUATION | | * | | 7 | X | | | | | | |
| 40 SUMMARY | | | | | | | | | | | |

ADVANCEMENT RECOMMENDATION: 41 [ ] RECOMMENDED 42 [X] PROGRESSING TOWARD 43 [ ] NOT RECOM *

44 ACKNOWLEDGEMENT BY AND SIGNATURE OF MEMBER
I ACKNOWLEDGE THAT I HAVE SEEN THIS EVALUATION REPORT AND UNDERSTAND MY RIGHTS UNDER ARTICLE 1110, ~~U.S. NAVY REGS., 1973,~~ TO SUBMIT A STATEMENT.
I INTEND TO SUBMIT/(NOT TO SUBMIT A STATEMENT) (CIRCLE YOUR INTENTION).

[signature] Osei A. S.

DATE SIGNED BY MEMBER: 07 FEB 92

45 SIGNATURE OF REPORTING SENIOR: [signature] RJ Wilson

46 ADDRESS OF REPORTING SENIOR:
COMMANDING OFFICER
FIGHTER SQUADRON ONE (VF-1)
FPO AP 96601-6100

47 TYPED NAME AND SIGNATURE OF REGULAR REPORTING SENIOR ON CONCURRENT REPORT

48 DATE FORWARDED: 92MAR31

49 DATE FWD (IF 47 USED)

NAVPERS 1616/24 (REV 6-84) SN 0106-LF-016-1722
REPORT NMPC 1616-1

WORK SHEET

Resp Ex: A

OCR TYPING FONT NOT REQUIRED FOR COMPLETION OF THIS SIDE

50 MEMBER'S LAST NAME, INITIALS
STEVENS, D A

REDACTED [redacted]

PERIOD OF REPORT
52 From 91MAY31 53 To 92JAN31

54 DUTIES AND RESPONSIBILITIES
PRI: Aviation Life Support Systems (ALSS) Branch Crew Member-5: performs organizational level maintenance on 11 F-14A aircraft and 30 aircrew ALSS equipment. TAD to NAS Miramar self help-3. WATCH: Flight line, hangar and barracks fire/integrity/security watch; duty driver-5. COLL: Welfare/ Recreation Representative-5, Asst. Tool Control PO-5.

55 SPECIAL ACHIEVEMENTS
Awarded National Defense Service Medal. Certified Ordnance Team Member. Completed Flight Line Security Training. Letter of Appreciation from CO, NAS Miramar.

56 EVALUATION COMMENTS

*U S GPO 1990-783-002/37027

PRAA Stevens performs well with minimum supervision. He is eager to learn and gets along well with his peers. Highlights of his performance include:

- A Letter of Appreciation from the Commanding Officer, NAS Miramar, for his efforts while attached to Self Help.

- Directly responsible for all shop maintenance tasks, he performed well during the El Centro detachment.

- Repeated unauthorized absences culminated in CO's NJP on 92JAN08.

PRAA Steven's uniform appearance and military bearing need improvement. He is a very capable individual and has unlimited potential to succeed, but lacks maturity. He is making satisfactory progress, but is not yet up to the standards required to recommend advancement at this time.

RETENTION: Recommended

BLOCK 54 CONTINUED:

Asst. Supply PO-5. Deployed in USS RANGER (CV 61) 91DEC02-13 (REFTRA; TAD to S-3 Division). Detached 91NOV11-22 (NAF El Centro) and 92JAN09-31 (NAS Fallon).

LV/TR: 91MAY31-91JUN07

1616-1

# ENLISTED PERFORMANCE EVALUATION REPORT

1 NAME (LAST, FIRST, MIDDLE OR MIDDLE INITIAL): STEVENS, OSEI A

2 RATE: PRAR

REDACTED

BRANCH/CLASS: 4 [X] USN 5 [ ] USNR

STATUS: 6 [X] ACTIVE 7 [ ] INACTIVE 8 [ ] TEMAC 9 [ ] ACDUTRA

10 MEMBER'S SHIP OR STATION: VF-1

11 MEMBER'S UIC: 09012

12 DATE REPORTED: 91JUN07

OCCASION FOR REPORT: 13 [ ] PERIODIC 14 [ ] TRANSFER 15 OTHER SEP

PERIOD OF REPORT: 16 FROM 92FEB01 17 TO

TYPE OF REPORT: 18 [X] REGULAR 19 [ ] CONCURRENT

20 PHYSICAL READINESS

21 RESERVE PART

22 DATE OF RATE: 92MAY04

23 REPORTING SENIOR'S NAME (LAST AND INITIALS): BERNHARD, D. L.

24 RANK: CDR

25 TITLE: CO

26 SSN: 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

| EVALUATION SECTION *REQUIRES COMMENT IN BLOCK 56 | NOT OBS | 4.0 | 3.8 | 3.6 | 3.4 | 3.2 | 3.0 | 2.8* | 2.6* | 2.0* | 1.0* |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PROFESSIONAL FACTORS: 27 MILITARY KNOWLEDGE/ PERFORMANCE | | | | | | | | | | | X |
| PROFESSIONAL FACTORS: 28 RATING KNOWLEDGE/ PERFORMANCE | | | | | | X | | | | | |
| PERSONAL TRAITS: 29 INITIATIVE | | | | | | | | | | | X |
| PERSONAL TRAITS: 30 RELIABILITY | | | | | | | | | | | X |
| PERSONAL TRAITS: 31 MILITARY BEARING | | | | | | | X | | | | |
| PERSONAL TRAITS: 32 PERSONAL BEHAVIOR | | | | | | | | | | | X |
| PERSONAL TRAITS: 33 HUMAN RELATIONS INCL EQUAL OPPORTUNITY | | | | | | | X | | | | |
| SELF EXPRESSION: 34 SPEAKING ABILITY | | | | X | | | | | | | |
| SELF EXPRESSION: 35 WRITING ABILITY | | | | X | | | | | | | |
| LEADERSHIP: 36 DIRECTING | X | | | | | | | | | | |
| LEADERSHIP: 37 COUNSELING | X | | | | | | | | | | |
| 38 MANAGEMENT (E-7/8/9 ONLY. NOB FOR E-6 AND BELOW) | X | | | | | | | | | | |
| 39 OVERALL EVALUATION | | * | | | | | | | X | | |
| 40 SUMMARY | | | | | | | | | | | |

ADVANCEMENT RECOMMENDATION: 41 [ ] RECOMMENDED 42 [ ] PROGRESS TOWARD 43 [X] NOT RECOM *

44 ACKNOWLEDGEMENT BY AND SIGNATURE OF MEMBER
I ACKNOWLEDGE THAT I HAVE SEEN THIS EVALUATION REPORT AND UNDERSTAND MY RIGHTS UNDER ARTICLE 1110, U.S. NAVY REGS., 1973, TO SUBMIT A STATEMENT.
I INTEND TO SUBMIT/NOT TO SUBMIT A STATEMENT. (CIRCLE YOUR INTENTION).

DATE SIGNED BY MEMBER: [signature] 25JUL92

45 SIGNATURE OF REPORTING SENIOR: [signature]

46 ADDRESS OF REPORTING SENIOR:
COMMANDING OFFICER
FIGHTER SQUADRON ONE (VF-1)
FPO AP 96601-6100

47 TYPED NAME AND SIGNATURE OF REGULAR REPORTING SENIOR ON CONCURRENT REPORT

48 DATE FORWARDED

49 DATE FWD (IF 47 USED)

NAVPERS 1616/24 (REV 6-84) SN 0106-LF-016-1722
REPORT NMPC 1616-1

WORK SHEET

Ex 4

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 9

## COMMAND COUNSELING ENTRY

NAVPERS 1070/613 (November 29, 1991) — earliest entry; Other-Than-Honorable warning by the Legal Officer; before the Board (SSN redacted)

DEPARTMENT ... REPRODUCED AT GOV ...

ADMINISTRATIVE REMARKS
NAVPERS 1070/613 (REV. 10-81)
S/N 0106-LF-010-6991

E-32

STATION

COMMANDING OFFICER, FIGHTER SQUADRON ONE (VF-1)

1. You are being retained in the Naval Service, however, the following deficiencies in your performance and/or conduct are identified:
INABILITY TO MEET REQUIREMENT FOR DUTIES ON TIME

2. The following are recommendations for corrective action:
STOP ASSUMING, REVIEW & LEARN SQUADRON DOCTRINES, RULES & REGULATIONS, ASK MORE QUESTIONS WHEN IN DOUBT, REGARDLESS OF ~~[illegible]~~ ANY DEROGATORY REMARKS I MIGHT RECIEVE, KEEP UP ON MEDICAL HEALTH (SEE DOCTOR WHEN NESCESSARY).

3. You are advised that any further deficiencies in your performance and/or conduct may result in disciplinary action and in processing for administrative discharge. All deficiencies previously cited and/or misconduct during your current enlistment, both prior to and subsequent to the date of this action will be considered. Subsequent violation(s) of the UCMJ or conduct resulting in civilian conviction could result in an administrative separation under Other than Honorable conditions.

4. This counseling/warning entry is made to afford you an opportunity to undertake the recommended corrective action. Any failure to adhere to the guidelines cited above, which is reflected in your future performance and/or conduct, may make you eligible for administrative separation action.

Counselor: [signature] LT USN
Title: Legal Officer 29 Nov 91

I hereby acknowledge that I have read and understand the above warning.

[signature] PRAA
Signature of Member counseled

| NAME (Last, First, Middle) | SSN | BRANCH AND CLASS |
|---|---|---|
| STEVENS, OSEI AJAGBE | [redacted] REDACTED | USN |

13 [10]

Ex 6

*Harper v. United States Department of the Navy*
Civil Action No. 4:26-cv-00395-AW-MAF
United States District Court, Northern District of Florida, Tallahassee Division

# EXHIBIT 10

## DECLARATION OF PLAINTIFF

Declaration under 28 U.S.C. § 1746

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF FLORIDA**

**TALLAHASSEE DIVISION**

OSEI A. HARPER,
Plaintiff,
v.
UNITED STATES DEPARTMENT OF THE NAVY, et al.,
Defendants.

Civil Action No. 4:26-cv-00395-AW-MAF

**DECLARATION OF OSEI A. HARPER CONCERNING TRANSMITTAL, AUTHENTICATION, AND RECORD COMPLETENESS — NOT PART OF THE ADMINISTRATIVE RECORD**

I, Osei A. Harper, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the Plaintiff. I make this declaration from personal knowledge and from records I created and maintain.

2. Exhibit 4 (Transmittal Ledger). I personally prepared and transmitted each BCNR-directed submission identified in the Transmittal Ledger from my email account to the Board's designated intake mailbox; ledger entries reflecting collateral or multi-recipient correspondence are identified as such in the ledger and are not characterized here as Board submissions. The ledger entries, and the postmaster relay receipts and read receipts reproduced with them, are true and accurate copies of records generated and retained in my email account in the ordinary course, and the ledger records each transmission's status only as individually documented — sent; relayed/delivered; read; receipt not individually mapped; or receipt not located — without characterization beyond the underlying evidence.

3. Exhibit 5 (Comparative Record Matrix v2). I personally compiled the matrix by comparing, page by page, the government productions of my records against the contemporaneous personal and administrative-discharge-board copies in my possession. The source documents cited in the matrix are true copies of documents in my possession, and the matrix's Corrections & Flags sheet records corrections in both directions, including corrections adverse to my position.

4. Post-service record. Since my discharge on September 21, 1992, I have never been arrested for, charged with, or convicted of any criminal offense. The degrees, professional certifications, and published works transmitted to the Board on July 17, 2025 are mine and the copies transmitted were true copies.

5. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 20, 2026

Osei A. Harper, Plaintiff pro se
613 E. 9th Avenue, Havana, Florida 32333 —
oseis572@gmail.com