**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

OSEI A. HARPER,
Plaintiff,
v.
UNITED STATES DEPARTMENT OF THE NAVY,
HUNG CAO, in his Official Capacity as Acting Secretary of the Navy,
Defendant.

Case No. 4:26-cv-00395-AW-MAF

/

---

**PLAINTIFF'S MOTION FOR AN ORDER DIRECTING THE CONTENTS OF THE ADMINISTRATIVE RECORD**

---

Plaintiff Osei A. Harper, proceeding pro se and in forma pauperis pursuant to the Court's Order of August 21, 2026 (ECF No. 6), respectfully moves the Court, pursuant to its authority to govern the administrative record on review under the Administrative Procedure Act and to Federal Rule of Civil Procedure 1, for an order directing that the administrative record the Defendant certifies and files in this action include the categories of materials identified in the relief requested below. Plaintiff brings this motion in advance of the record's certification because a recent production by the Board for Correction of Naval Records ("BCNR") — its own identification of Plaintiff's complete case file — reveals a concrete and documented risk that the record certified to this Court will materially understate what was before the agency. The grounds and supporting authority are set forth below, and the motion and memorandum are combined in this single document.

---

## FACTUAL BACKGROUND

1. On September 7, 2026, Plaintiff submitted a request under the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, assigned tracking number DON-



RCV'D USDC FLND TL
SEP 18 '26 AM10:54

BCNR-2026-000110, seeking the complete administrative and decisional record for BCNR Docket No. 8252-25 in ten enumerated categories reaching, among other things, the case-file index; all materials before the Board from any source; the advisory opinion and the records reflecting its solicitation and transmittal; examiner and analyst work product; the records identifying the evidence and authorities relied upon; communications with other Navy or Department of Defense offices and records custodians; and the records reflecting the retrieval, supplementation, or handling of records.

2. By letter dated September 17, 2026, BCNR responded that it interpreted the request as seeking Plaintiff's "entire BCNR case file, case tracking information, and metadata"; that it searched its records-management system and "found one (1) file"; and it produced that file as complete. It declined to produce the requested metadata, on the stated ground that metadata "is not a record."

3. The produced file is 247 pages. Examined page by page, the materials generated by the agency and neither submitted by Plaintiff nor previously transmitted to him consist of six pages: an internal entry log (p. 6), a recorder's log (p. 12), and an internal administrative summary and chronology (pp. 13–16). The dispositive decision (pp. 7–11) had already been transmitted to Plaintiff. From page 17 onward, without exception, the file consists of materials Plaintiff himself submitted, save two (2) communication artifacts (Docketing acknowledgement and Advisory Opinion), beginning with his DD Form 149. To the extent contemporaneous Navy-origin documents appear in the file, they are present because Plaintiff submitted them, not by reason of any independent retrieval reflected in the record.

4. The produced file reflects no index or inventory of what was before the Board; no examiner, analyst, or staff work product identifying the materials actually reviewed; no records identifying the specific evidence and authorities relied upon; no correspondence with records custodians or other Navy or Department of Defense offices; and — apart from a bare notation that an advisory opinion was requested — no records reflecting the retrieval, receipt, inability to locate, or supplementation of any official Navy record during the adjudication. No privilege log was produced.

5. On January 28, 2026, Plaintiff precautionarily resubmitted, in flat-PDF format, materials previously submitted on January 9 after BCNR raised a technical compatibility concern. Plaintiff expressly advised BCNR that the resubmission was substantively identical to the January 9 submission and was provided solely to eliminate any potential system-compatibility issue. The resubmitted materials were specifically itemized as: (a) Rebuttal to Advisory Opinion; (b) DD-214; (c) USPTO Provisional Filing: Harper Engine; (d) USPTO Provisional Filing: FUSE Framework Algorithms; (e) U.S. Copyright Registration: FUSE Framework; (f) Master's Degree; and (g) DD-149 Supplemental. BCNR acknowledged receipt and stated that the documents had been added to Plaintiff's case file for review. The internal log thereafter states, on February 2, 2026: "Reviewed materials resubmitted by Pet. No new medical evidence submitted. Original A/O remains the same." That notation materially understates the purpose and substance of the resubmission. The rebuttal was not offered merely to supply new medical evidence. It challenged the Advisory Opinion's reasoning by presenting the cited authorities and source material underlying its assertions, testing the AO's conclusions against the DSM-5 framework, and addressing the AO's use of diagnostic parsimony and competing-condition

reasoning. The significance of that entry is not merely that it characterizes the rebuttal as adding no new medical evidence; it shows that, within three days of documented receipt of the accessible rebuttal package, the agency had already reached a dispositive conclusion that the Advisory Opinion would remain unchanged.

6. The intake worksheet contains a field expressly captioned "Claims of Error / Injustice / Clemency," yet BCNR populated that field solely with "Injustice." Plaintiff's application presented all three distinct grounds: error through the alleged erroneous failure to flag or account for his GI Bill contribution; injustice through the challenged discharge characterization and associated classification and process defects; and clemency through extensive post-discharge rehabilitation and achievement evidence. It further recorded the record change requested as including "restoration of GI Bill benefits" — a characterization the decision then used to decline the request as a matter of veterans' benefits outside the Board's cognizance. But Plaintiff's DD Form 149 (pp. 17–18) requested an upgrade of discharge, correction of separation to reflect medical retirement, restoration of GI Bill benefits, **and formal acknowledgment of racial targeting, unlawful command influence, medical neglect, and denied due process.** The Board's decision addressed only the GI Bill request and the discharge upgrade, while declining to substantively address the other claims. This selective framing suggests the Board did not consider all relevant factors.

7. The Board's decision states that it applied the liberal-consideration standards reflected in the Hagel, Kurta, and Wilkie memoranda. The produced internal record identifies those authorities, as well as identifying Carson, but contains no analysis showing how those standards were applied to Plaintiff's distinct claims, rebuttal, medical evidence, or clemency evidence. The recorder's log reflects a unanimous denial on the merits and

carries "AO - Unfav" as the operative case comment, but the produced record does not disclose the substantive application of the liberal-consideration framework the Board represented that it used.

8. The internal summary of authorities identifies the Hagel, Carson, Kurta, and Wilkie memoranda as applicable authorities. The final decision identifies Hagel, Kurta, and Wilkie but does not identify Carson, and the produced record contains no contemporaneous analysis showing how the requirements of those authorities were applied to Plaintiff's individual claims and evidence. This suggests the Board may not have applied any or all relevant governing authorities.

9. The internal activity log establishes a compressed sequence that is difficult to reconcile with the Board's obligation to evaluate the totality of the record under the governing standards. The rebuttal response was received on January 29, 2026. Three days later, on February 2, 2026, the agency recorded that it had "Reviewed materials resubmitted by Pet. No new medical evidence submitted. Original A/O remains the same." The Board convened on February 10, 2026 — eight days after the rebuttal was dismissed — and a draft decision was uploaded for "ED review and signature" on February 24, 2026. Nowhere in this sequence is there a contemporaneous record of the panel evaluating the totality of the record, addressing Plaintiff's distinct claims, debating the competing etiologies, considering mitigating or clemency evidence, or applying the liberal-consideration standards of Hagel, Carson, Kurta, and Wilkie, that the internal notations and final decision represent were applied. The recorder's log carries "AO - Unfav" as the operative case comment. The produced record supports the inference that the advisory opinion fixed the

outcome before the petitioner had an opportunity to respond, the rebuttal was disposed of before the panel met, and the panel's vote was ratification rather than deliberation.

10. The production is, in substance, the government's own account of the record that was before the Board. It establishes that the evidentiary record the Board relied upon was supplied by Plaintiff, and that the categories of materials that would ordinarily evidence the agency's independent development, identification, and consideration of the record are, on the face of the production, absent. This motion asks the Court to ensure that the administrative record certified for judicial review reflects the whole record actually before the agency.

Plaintiff has preserved the complete 247-page BCNR production referenced herein. Because the production contains Privacy Act-protected information and personally identifiable information, Plaintiff has not filed the entire production as an exhibit and thereby unnecessarily placed sensitive material on the public docket. Plaintiff is prepared to provide the complete production to the Court upon request, or in whatever manner the Court directs.

---

## MEMORANDUM OF LAW

### I. The administrative record must contain the whole record that was before the agency.

Judicial review under the Administrative Procedure Act is review of "the whole record" that was before the agency at the time of its decision. 5 U.S.C. § 706. The reviewing court must be able to determine whether the agency's decision was based on consideration of the relevant factors, and review is to be based on the full administrative record. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20 (1971). Review focuses on "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S.

138, 142 (1973). The Eleventh Circuit likewise recognizes that "[t]he focal point for judicial review of an administrative agency's action should be the administrative record." *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996). The record accordingly comprises the materials the agency directly or indirectly considered; it is not limited to the subset the agency elects to certify. *See also Walter O. Boswell Memorial Hospital v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984); *Environmental Defense Fund v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981); *National Courier Ass'n v. Board of Governors*, 516 F.2d 1229, 1236 (D.C. Cir. 1975).

**II. The production shows a documented risk that the certified record will understate what was before the Board.**

The government's own production identifies Plaintiff's "entire BCNR case file" and, on its face, shows that the record consisted overwhelmingly of Plaintiff's own submissions, that the agency generated no independent documentary development beyond a handful of internal pages, and that the categories of materials ordinarily reflecting a complete record — an index of what was before the Board, the materials identifying what was considered, the solicitation and transmittal of the advisory opinion, and any communications developing or reconciling the underlying Navy record — do not appear. Where the record does not disclose the basis for the agency's action, further explanation and completion of the record are warranted. *Overton Park*, 401 U.S. at 420. Where the record does not support the action, the relevant factors were not considered, or the court cannot evaluate the action on the record before it, the ordinary course is a remand for additional investigation or explanation. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Eleventh Circuit precedent likewise treats the administrative record as the controlling basis for review and recognizes the need for a record adequate to permit review of agency action. *Preserve*

*Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996). An order directing the completeness of the record before it is certified serves the same end at lower cost to the Court and the parties.

**III. The Board is bound to a record consistent with the standard it invoked.**

The Board's decision states that it applied the liberal-consideration standard of the governing memoranda in adjudicating Plaintiff's claims. An agency is bound to observe the procedures and standards it has adopted and invoked, and departures from them are not trivial. *Service v. Dulles*, 354 U.S. 363, 388–89 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959). A record adequate to test whether the agency did what it said it did — whether it examined the relevant data and articulated a rational connection between the facts and its conclusion, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) — must contain the materials the agency considered and the record of how the governing standard was applied. The certified record should reflect that whole record.

**IV. The produced record affirmatively conflicts with the Board's representation that it conducted "careful review" and applied the governing liberal-consideration standards.**

The Board's final decision expressly represents that its conclusions followed "careful review." It further acknowledges that Plaintiff submitted additional evidence in response to the Advisory Opinion and states: "After reviewing your rebuttal evidence, the AO remained unchanged." Immediately thereafter, the Board represents that it "applied liberal consideration" to Plaintiff's TBI and mental-health claims under the Hagel and Kurta memoranda, and later states that it considered the totality of the circumstances under the Wilkie memorandum.

The produced record affirmatively conflicts with those representations. Plaintiff's accessible rebuttal package was logged as received on January 29, 2026. The next business day was Friday, January 30; January 31 and February 1 fell on the weekend. By Monday, February 2, the agency had already recorded: "Reviewed materials resubmitted by Pet. No new medical evidence submitted. Original A/O remains the same." The final decision then carried forward materially the same disposition: "After reviewing your rebuttal evidence, the AO remained unchanged." The Board date was February 10. Thus, the produced chronology reflects, at most, one intervening business day in which the agency could have routed, evaluated, cross-checked, and substantively considered Plaintiff's 24-page rebuttal, testing its challenges to the AO's cited authorities and DSM-5 reasoning, weighing competing etiologies, or applying the Hagel, Carson, Kurta, and Wilkie standards to the evidence presented.

That compressed interval is especially significant because BCNR had itself determined that the underlying mental-health issues warranted specialized evaluation by a licensed clinical psychologist. Yet the complete production contains no indication that Plaintiff's technically grounded rebuttal was referred back to that advisory source, no supplemental advisory response, and no contemporaneous analysis showing how the rebuttal was substantively resolved before the conclusion that the "Original A/O remains the same."

That omission is particularly significant because the Advisory Opinion itself acknowledged that additional records concerning Plaintiff's diagnoses, symptoms, and their relationship to his separation "may aid in rendering an alternate opinion." Plaintiff's rebuttal specifically challenged the AO's reasoning and supplied materials in support of that challenge. Yet the produced record discloses no referral of the rebuttal back to the Advisory Opinion provider, no supplemental

advisory analysis, and no contemporaneous explanation of why evidence potentially capable of supporting an alternate opinion nevertheless left the AO unchanged.

The government's own materials also conflict with each other. The decision states that Plaintiff "provided additional evidence in support of your application" and that, "[a]fter reviewing your rebuttal evidence, the AO remained unchanged." The contemporaneous activity log records a different characterization: "No new medical evidence submitted. Original A/O remains the same." The decision's representation that review occurred — and that the AO was left unchanged as the result of that review — is not corroborated by the agency's own processing record, which disposed of the submission in three days with a boilerplate entry before the Board even convened. The two documents describe the same event in incompatible terms.

The Board nevertheless proceeded from that unchanged Advisory Opinion directly to the representation that it had applied liberal consideration. The record therefore presents more than an unexplained gap. It documents the receipt of Plaintiff's rebuttal, its disposition within days, an unchanged adverse Advisory Opinion, and a subsequent assertion of liberal consideration, without documenting the analytical process connecting those events. The Board's statement that it conducted "careful review" likewise identifies no review separate from the cursory treatment preserved in the activity log and repeated in the final determination.

Under *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, an agency must examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made; agency action is arbitrary and capricious where the agency fails to consider an important aspect of the problem or offers reasoning inconsistent with the evidence before it. 463 U.S. 29, 43 (1983). Here, the

produced record supplies no contemporaneous analytical bridge between the rebuttal evidence the Board acknowledges receiving and the conclusion that the AO remained unchanged, nor between that conclusion and the Board's subsequent representation that it applied liberal consideration.

The problem is therefore not that Plaintiff disagrees with the weight the Board assigned his evidence. The problem is that the Board expressly represents that "careful review" and liberal consideration occurred, while its own complete-file production does not document when, where, or how that review and consideration occurred.

**V. The produced record does not demonstrate that Plaintiff's substantive rebuttal was referred to or considered by the Advisory Opinion provider.**

Plaintiff's January 28 resubmission was a precautionary re-delivery of a specifically identified January 9 rebuttal package after BCNR raised a technical concern. BCNR acknowledged that the materials were added to the case file for review on January 29. The internal record nevertheless disposes of that package in a single entry on February 2: "Reviewed materials resubmitted by Pet. No new medical evidence submitted. Original A/O remains the same."

That characterization does not address what the rebuttal actually did. Plaintiff used the cited authorities and underlying source material to challenge the Advisory Opinion's reasoning, including its DSM-5 alignment and application of diagnostic parsimony. Nothing in the produced record indicates that the rebuttal was referred back to the Advisory Opinion provider, that the provider was asked to reconsider or defend the challenged reasoning, or that a supplemental advisory response was obtained. The record therefore does not establish that the Advisory Opinion itself survived substantive reconsideration; it establishes only that BCNR left the original Advisory Opinion unchanged after receiving Plaintiff's rebuttal.

The complete administrative record should therefore disclose whether the rebuttal was transmitted to the advisory office, whether reconsideration was requested, and what process, if any, produced the determination that the "Original A/O remains the same."

The chronology further heightens the concern. Plaintiff submitted his rebuttal on January 9, 2026, but BCNR did not notify him until January 28 that it had been unable to open the submission. Plaintiff resubmitted the materials in an accessible format on January 28, and BCNR logged their receipt on the next business day, January 29. Yet by February 2 the internal log had already reduced the rebuttal to "No new medical evidence submitted" and concluded that the "Original A/O remains the same." The produced record contains no indication of referral back to the Advisory Opinion provider, no supplemental advisory response, no documented reconsideration of the challenged reasoning, and no other indicia of substantive engagement during that interval. Thus, within only days of BCNR's documented receipt of the accessible rebuttal package, the Advisory Opinion was left unchanged, while the complete production discloses no process showing how the substantive challenges raised in rebuttal were actually tested or answered.

The compressed treatment is particularly notable because BCNR's own record reflects a longer interval merely to transmit the original Advisory Opinion to Plaintiff than it reflects between documented receipt of the corrected rebuttal materials and the determination that the Advisory Opinion would remain unchanged.

BCNR obtained an Advisory Opinion because specialized evaluation was deemed necessary. Plaintiff's rebuttal then challenged the Advisory Opinion on its own technical terms, including its use of cited authority, DSM-5 alignment, and diagnostic-parsimony reasoning. Yet the produced record contains no indication that the rebuttal was referred back to the Advisory Opinion provider,

no supplemental advisory response, and no record that the specialized reasoning challenged by Plaintiff was reconsidered by anyone possessing the expertise for which the Advisory Opinion had originally been sought.

BCNR plainly retained authority to adjudicate the application. The issue is different: having relied upon specialized advisory reasoning, the Board's record does not show how it could substantively resolve a technical rebuttal to that reasoning without either obtaining a response from the advisory source or independently documenting a competent basis for rejecting the rebuttal. The production contains neither.

**VI. The contemporaneous activity record reflects disposition before deliberation and ratification after the fact.**

The internal activity log exists to contemporaneously record the progression of the adjudication. Yet during the period in which the Board later represented that it conducted "careful review," applied liberal consideration, and evaluated Plaintiff's rebuttal, the log records no corresponding deliberative activity. What it does record is a sequence of disposition: "Unfavorable A/O complete" on January 1; receipt of Plaintiff's rebuttal on January 29; a February 2 determination that the "Original A/O remains the same"; a February 10 Board date; and, thereafter, preparation of the draft decision for Executive Director review and signature.

The government's own materials also fail to identify who made the February 2 determination that the Advisory Opinion would remain unchanged, or by what authority. The Board did not convene until February 10. The record therefore reflects a substantive determination regarding the continuing validity of the Advisory Opinion eight days before the adjudicating panel met, without identifying the decisionmaker, the authority exercised, or any intervening deliberative process.

On the face of the complete production, the adverse disposition preceded the Board's meeting. The contemporaneous record therefore supports the conclusion that the February 10 vote functioned as ratification of an existing disposition rather than as the point at which the competing evidence, claims, and governing standards were independently deliberated.

**VII. The Board's selective framing of Plaintiff's claims is a material omission.**

The intake worksheet recorded the claim as "Injustice" alone and the record change requested as including "restoration of GI Bill benefits" — a characterization the decision then used to decline the request as outside the Board's cognizance. But Plaintiff's DD Form 149 requested an upgrade of discharge, correction of separation to reflect medical retirement, restoration of GI Bill benefits, **and formal acknowledgment of racial targeting, unlawful command influence, medical neglect, and denied due process.** The Board's decision addressed only the GI Bill request and the discharge upgrade, while declining to substantively address the other claims. The certified record should include all records reflecting the Board's framing and consideration of Plaintiff's claims.

**VIII. The categorical withholding of metadata materially impairs verification of record completeness and agency process.**

BCNR declined to produce metadata on the ground that it "is not a record." But Plaintiff specifically requested tracking information showing when materials were received, added, routed, reviewed, transmitted, and associated with the docket. Such information bears directly on the adequacy and completeness of the agency's identification of the materials comprising the adjudicative record. See *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146 (D.D.C. 2004) (adequacy of agency search turns on whether the search was conducted in good faith and was reasonably calculated to uncover responsive documents).

The sequencing permits the reasonable inference that the written decision was prepared through staff processing after the stated Board date and thereafter ratified for signature, rather than reflecting a contemporaneously documented deliberative process by the panel itself. BCNR's refusal to produce the metadata and tracking information ***specifically requested for that purpose*** prevents further reconstruction of the sequence. Here, that information is particularly material because the produced record contains timing and sequencing anomalies that cannot be resolved from the six disclosed internal pages alone.

**IX. Directing the record's contents now conserves the resources of the Court and the parties.**

Federal Rule of Civil Procedure 1 directs that these rules be administered to secure the just, speedy, and inexpensive determination of the action. The production already identifies, from the government's own file, the specific categories at risk of omission. Resolving the record's completeness at the outset — rather than through successive motions after a minimal record is certified — avoids duplicative litigation and the delay of a later remand solely to complete the record. Plaintiff does not ask the Court at this stage to finally resolve the merits or ultimate significance of these discrepancies; he asks that the administrative record certified for review contain the whole record actually before the agency so that those questions may be adjudicated on a complete and reliable record.

---

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court enter an order directing that the administrative record the Defendant certifies and files in this action include the following, to the extent each exists:

1. The complete index, inventory, or manifest of the materials contained in, associated with, or before the Board in connection with Docket No. 8252-25.

2. All materials the Board directly or indirectly considered, from any source, including any records independently obtained by or internally retrieved for the Board, distinct from the materials Plaintiff submitted.

3. The complete Advisory Opinion, together with the records reflecting its solicitation, the framing of the questions posed, and its transmittal into the record.

4. All examiner, analyst, or staff work product identifying the materials actually reviewed and the basis for the recommendation to the Board.

5. All records identifying the specific evidence, documents, and authorities the Board considered or relied upon in reaching its decision.

6. All correspondence or communications concerning the docket between BCNR and any other office of the Department of the Navy or Department of Defense, records custodian, or command.

7. All records reflecting any request for, receipt of, inability to locate, omission of, supplementation of, or consideration of records relevant to the adjudication.

8. Unredacted copies of the internal entry log, recorder's log, and intake worksheet.

9. All metadata or tracking information concerning the docket including audit logs, system transaction histories, user access records, and routing timestamps for BCNR Docket No. 8252-25.

10. To the extent any responsive material is withheld from the certified record on a claim of privilege, a log identifying each item withheld and the specific basis asserted for its withholding, sufficient to permit meaningful review.

---

## CONCLUSION

If the production truly constitutes the complete evidentiary universe of the BCNR adjudication, then the deficiencies are intrinsic to the adjudicative process itself: the record reflects no independent evidentiary development, incomplete internal framing of Plaintiff's claims, substantial obscuring of the decisional process, and an outcome-oriented advisory characterization. Those circumstances strongly support an inference that the adjudication was pretextual rather than the product of a fully developed and neutral administrative review.

If, however, additional materials existed, were actually considered, and were subsequently omitted from the production, then BCNR's express representation that the single file constituted Plaintiff's entire case file becomes a material factual misrepresentation. Such a contradiction would call into serious question the reliability of BCNR's representations concerning what was considered, what was maintained, and what constituted the record, and would further reinforce Plaintiff's identification of material on-record discrepancies that appear to have been disregarded or obscured during the adjudicative process.

These deficiencies bring the issue full circle. Judicial review cannot meaningfully proceed by attributing regularity to an administrative record that affirmatively reflects error, incomplete claim framing, absent evidentiary development, unexplained redactions, missing communications, and an outcome-oriented advisory process. The presumption of regularity is a judicial working principle, not a mechanism by which an agency may cure defects in its own record by assertion.

Where the record itself supplies substantial reason to question the regularity of the process that produced it, judicial intervention is necessary to prevent regularity from being misattributed to an erroneous, pretextual, or materially obscured adjudication.

Allowing an agency to invoke regularity notwithstanding affirmative documentary evidence calling that regularity into question would invert the purpose of the presumption. It would reward opacity rather than reliable administration and risk converting a doctrine grounded in institutional trust into insulation from meaningful judicial review. The integrity of that presumption depends upon agencies maintaining records and making representations upon which courts can reasonably rely.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order directing that the administrative record certified in this action include the categories set forth above, and grant such other and further relief as the Court deems just and proper. A proposed order is submitted herewith.

Respectfully submitted,

Dated: September 17, 2026

Osei A. Harper, Plaintiff, pro se
613 E. 9th Avenue
Havana, Florida 32333
oseis572@gmail.com
347.804.1232

## CERTIFICATE OF CONFERRAL AND PROCEDURAL NOTE REGARDING SERVICE AND ENCLOSURES

Pursuant to Local Rule 7.1(B), Plaintiff states as follows:

1. The complaint in this action has not yet been served on Defendant. By Order dated August 31, 2026 (ECF No. 9), the Court granted Plaintiff's motion for service by the United States Marshals Service and directed Plaintiff to provide the Clerk of Court with three service copies of the operative complaint (ECF No. 5). Plaintiff provided those copies on September 1, 2026 (ECF No. 10). By its own terms, the August 31 Order provided that a further order would issue "upon receipt" of the copies, directing the Clerk to provide the Marshals Service with a copy of the complaint, reissue summons, and provide instructions for service on Defendant. That further order has not yet been entered.
2. Because service has not been perfected, no counsel has appeared for Defendant, and there is no party or counsel with whom Plaintiff could confer regarding the relief requested in this motion.
3. Plaintiff has not contacted the United States Attorney's Office for the Northern District of Florida regarding this motion because that office has no knowledge of this action: the statutory gateway of service of process under Fed. R. Civ. P. 4(i) has not yet been satisfied, and no appearance has been entered. Plaintiff will confer with Defendant's counsel promptly upon appearance, and will supplement this certificate as appropriate.
4. Plaintiff files this motion to alert the Court and the Defendant to a development bearing on the completeness of the administrative record, so that the issue may be resolved before the record is certified rather than after.

5. Plaintiff has supplied three servable copies of this motion. The proposed order accompanying this motion is filed on the docket and is available through the Court's electronic filing system.

Respectfully submitted,

Dated: September 17, 2026

Osei A. Harper, Plaintiff, pro se
613 E. 9th Avenue
Havana, Florida 32333
oseis572@gmail.com
347.804.1232

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(F), Plaintiff certifies that the foregoing motion and incorporated memorandum contain 4,689 words, excluding the case style, signature block, certificates, and other material excluded from the word-count calculation by the applicable rules.

Respectfully submitted,

Dated: September 17, 2026

Osei A. Harper, Plaintiff, pro se
613 E. 9th Avenue
Havana, Florida 32333
oseis572@gmail.com
347.804.1232