**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

OSEI A. HARPER,
Plaintiff,
v.
UNITED STATES DEPARTMENT OF THE NAVY, HUNG CAO, in his Official Capacity as Acting Secretary of the Navy,
Defendant.
/

Case No. 4:26-cv-00395-AW-MAF

**PLAINTIFF'S MOTION FOR CLARIFICATION, PROSPECTIVE RULE 4(m) PROTECTION, ENFORCEMENT OF COURT-DIRECTED SERVICE, AND DETERMINATION OF AVAILABLE RELIEF, WITH INCORPORATED MEMORANDUM, AND REQUEST FOR EXPEDITED CONSIDERATION**

## I. Preliminary Statement

In light of recent activity on the docket, Plaintiff once again carefully and respectfully approaches this Court seeking procedural protection, clarification, and the orderly advancement of this action.

Plaintiff acknowledges the Court's prior rulings and understands that his previous requests for intervention have been denied. Nevertheless, those determinations have left several material questions concerning the governing law, the continuing

FILED USDC FLND TL
NOV 5 '26 AM11:01

authority of the Court's September 21, 2026 service directive, and the protections afforded under Federal Rule of Civil Procedure 4(m) unresolved.

Plaintiff does not seek to challenge the Court's authority or demand agreement with his interpretation of the law. Rather, Plaintiff respectfully seeks to reconcile the existing procedural record with the applicable statutory and procedural requirements, ensuring that the Court's lawful directives retain their intended effect and that the administration of justice proceeds without unnecessary prejudice.

The passage of additional time has made these questions increasingly consequential. On September 21, 2026, this Court directed the United States Marshals Service ("USMS") to complete service within fourteen days. ECF No. 13 ¶ 4. That period expired October 5, 2026.

On October 16, 2026, the Court observed that service by the USMS generally requires approximately thirty to forty-five days. ECF No. 20 at 2. The Court did not identify an administrative or evidentiary source for that estimate, nor expressly modify its September 21 service directive.

As of the filing of this Motion, forty-five days — the full outer bound of the Court's own estimate — have elapsed since the September 21, 2026 service order. No return of service, executed or unexecuted, has been filed. No statement from the United

States Marshals Service has been filed. No appearance has been entered on behalf of Defendant. By the time this Motion is considered, the period the Court itself identified as the ordinary time for completion will have been exceeded. As of the date of this Motion, the directive entered on September 21, 2026 remains unsatisfied on the record of this case, as it has on every day since the fourteen-day period expired on October 5, 2026.

That is a fact that was not before the Court on October 16, 2026. When ECF No. 20 was entered, twenty-five days had elapsed since the service order, and the Court relied on an estimate that service "generally requires approximately thirty to forty-five days to complete." ECF No. 20 at 2. The factual premise of that ruling — that service might still be within the ordinary processing window — is no longer available. The benchmark the Court selected has run, on the Court's own terms, and nothing has changed on the docket.

Nor does the record permit the period to be measured from some later date of receipt by the USMS. The Court's order of September 21 directed the Clerk to provide the reissued summons, copies of the order, and Plaintiff's service copies to the USMS, ECF No. 13 ¶ 3, and the summons was reissued the same day. ECF No. 14. The October 16 estimate does not specify a starting date; but on any reading, the

documents were in the Clerk's hands for delivery to the USMS on September 21, and the Court's estimate was announced with knowledge of that date. If the USMS received the documents later than September 21, the date of receipt is a fact within its exclusive knowledge — which is precisely why an accounting is necessary.

Plaintiff previously requested a sworn accounting of service, a determination of good cause under Rule 4(m), and appropriate protective relief. ECF No. 18. Those requests were denied. ECF No. 20.

Plaintiff then identified specific factual and legal objections pursuant to Rule 72(a). ECF No. 21. Those objections were overruled without an individualized explanation resolving the identified discrepancies. ECF No. 22.

Plaintiff does not separately move for reconsideration of ECF No. 20. This Motion is directed to new matter that did not exist when ECF No. 20 was entered: the Court's own estimate of the time service ordinarily requires has now elapsed. If, however, the Court determines that the interest of justice and the orderly administration of this case warrant revisiting ECF No. 20, Plaintiff would concur in that course.

Plaintiff recognizes the Court's authority to rule adversely to his requests. He respectfully submits, however, that an adverse disposition does not eliminate the

continuing procedural questions where the underlying service obligation remains unresolved.

Accordingly, Plaintiff presents four narrow questions for the Court's consideration, each concerning authority already vested in this Court and relief available under existing federal law.

Each of the four concerns the same underlying issue: whether the Court's authority over its own officer is exercised through orders that bind, or through explanations that excuse. The first concerns the Rule 4(m) protection the rule requires. The second concerns the enforcement of the order the Court issued. The third concerns the standard by which nonperformance is assessed. The fourth concerns what remains available when the first three are denied. They are presented separately because each is answerable from the record, but they share a single premise: that a judicial directive retains its force unless modified through an appropriate exercise of judicial authority, and that a presumption of regularity cannot supply the modification that was never made.

**II. First Question: The denial of prospective protection under Rule 4(m) where the source of potential noncompliance was already identified**

Plaintiff respectfully seeks clarification of the Court's denial of prospective relief under Federal Rule of Civil Procedure 4(m).

Rule 4(m) provides that where a plaintiff demonstrates good cause for failure to accomplish timely service, the Court must extend the period for service for an appropriate time.

The Eleventh Circuit has expressly recognized that failure by the United States Marshal to accomplish service through no fault of a plaintiff proceeding in forma pauperis constitutes good cause. *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1288 (11th Cir. 2009).

Here, Plaintiff has fulfilled every service-related obligation imposed upon him.

He requested service by the USMS, supplied the required service copies, and complied with the Court's directives. The Court acknowledged that compliance in ECF No. 13.

Responsibility for the remaining service process was expressly assigned to the USMS pursuant to Rule 4(c)(3) and 28 U.S.C. § 1915(d).

Plaintiff therefore requests clarification as to why prospective Rule 4(m) protection was denied when the circumstances threatening timely service had already been identified and were not attributable to Plaintiff.

Plaintiff further respectfully asks:

> *Must an indigent plaintiff await expiration of the Rule 4(m) service period, and incur the resulting procedural uncertainty, before the Court exercises its existing authority to prevent foreseeable prejudice arising from the nonperformance of its appointed service agent?*

Plaintiff recognizes that *Rance* addressed a failure of service after expiration of the applicable period. He does not contend that the decision automatically mandates every prospective extension requested.

Rather, he submits that Rule 4(m) permits the Court to exercise its protective authority before expiration and asks why such relief was declined when the responsible agency's delay was already apparent.

The distinction is between waiting for an avoidable procedural injury to mature and using existing judicial authority to prevent that injury.

Plaintiff asks the Court to hold one date in view while it considers this request. This Motion is filed on November 5, 2026. The ninety-day period under Rule 4(m) ends on November 12, 2026. Between the two lie seven calendar days and, the Court

being closed on November 11, five business days. On November 12, the Court acquires the authority, after notice to Plaintiff, to dismiss this action without prejudice for want of service — or, in the alternative the rule itself provides, to order that service be made within a specified time, which is all Plaintiff has ever asked. The service in question is service that Rule 4(c)(3) required the Court to assign to its own officer, that the Court so assigned on September 21, and that the officer has neither performed nor accounted for in the forty-five days since.

Plaintiff asks the Court to be precise about what "without prejudice" would mean here. It would mean a new complaint, a new application to proceed in forma pauperis, a new order of referral to the same United States Marshals Service, and a new ninety-day period that begins at the same gate, with the same officer holding the summons, and with no more assurance of performance than this record shows. Every day of this case since August 13, 2026 would be lost, and nothing that caused the loss would have changed. That is the most concrete form of prejudice the rules recognize, and it is seven days away.

Plaintiff showed good cause in ECF No. 18. The Court did not find it absent; it did not address it. Plaintiff renews that showing here on a record that has only strengthened since — the Court's own forty-five-day estimate has now run, and the

docket is unchanged. He respectfully submits that a denial of prospective protection entered now would be entered with full knowledge that five business days remain, that the delay is attributable to no act or omission of his, and that the consequence of inaction falls entirely on the one participant who has complied. The passage of time has not made this request less necessary. It has made it the only thing standing between a compliant plaintiff and the loss of his case to an officer's silence.

Plaintiff respectfully requests an appropriate prospective extension of the Rule 4(m) deadline, together with a determination that delay attributable solely to the USMS shall not be imputed to Plaintiff.

## III. Second Question: The legal basis for continued nonenforcement of the Court's September 21 directive without an express modification or an accounting

Plaintiff respectfully seeks clarification concerning the continued nonenforcement of the Court's September 21, 2026 service directive.

That directive was not an administrative recommendation or a discretionary preference. It was an affirmative judicial order.

Paragraph 4 expressly provided that the USMS "shall serve" the amended complaint and summons within fourteen days.

Paragraphs 5 and 6 identified additional recipients and prescribed methods of transmission. Footnote 3 expressly recognized that documents intended for the United States Attorney's Office could be delivered personally because that office was located in the same building as the USMS.

The Court therefore established both a time for performance and the mechanisms by which performance could be accomplished.

The October 16 order subsequently stated that service generally requires thirty to forty-five days and described the original fourteen-day period as the time available for mailing the documents. ECF No. 20 at 2.

However, the original directive did not expressly distinguish a fourteen-day mailing period from a separate, longer completion period.

Nor did the subsequent ruling expressly vacate, amend, or extend the original directive.

Two further features of the September 21 order bear on this. First, the order itself anticipated the possibility that service would not be completed, and said what the USMS was to file in that event: the Clerk was directed to return the file "upon receipt of an executed or unexecuted service return." ECF No. 13 ¶ 9. An unexecuted return requires no completion, no transit time, and no signed receipt from any recipient. It

is a report of status, and the Court named it in the order. The October 16 explanation addresses only the time that completed service ordinarily takes. It does not address why the document the order expressly contemplated for incomplete service — an unexecuted return — has likewise never been filed.

Second, the Court's authority over its officer is exercised through its orders, and the only order ever directed to the USMS in this case is ECF No. 13, transmitted to it by the Clerk on September 21 with the reissued summons. ECF No. 14. The October 16 order is not a directive to the USMS; it is a disposition of Plaintiff's motion, addressed to Plaintiff, which the USMS has not been served with and which imposes no obligation on it. Whatever ECF No. 20 states about a fourteen-day period for mailing or a thirty-to-forty-five-day period for completion, it did not modify what the USMS was ordered to do. The only directive the USMS holds remains the one whose date has passed, and the only documents that directive called for — an executed or unexecuted return — remain unfiled.

The timing of that ruling should be stated precisely. The thirty-to-forty-five-day timeframe appears nowhere in the September 21 order. It was first announced on October 16, 2026 — eleven days after the fourteen-day period expired on October 5, two days after Plaintiff moved for an accounting of compliance, and one day after

the Court stated in a separate order that "[s]ervice on Defendant has not been completed." ECF No. 19 at 2. Whatever else may be said of it, a timeframe first articulated after the expiration of the deadline it is offered to excuse cannot have governed the officer's conduct during the period in question, and cannot retroactively convert nonperformance within that period into performance.

Plaintiff notes, because this is an action under the Administrative Procedure Act and the principle will govern its merits, that the October 16 explanation is *post hoc* in the precise sense that term carries in administrative law. The United States Marshals Service offered no reason for its nonperformance at the time, and has offered none since. The reason that now appears in the record was supplied eleven days after the deadline, by the Court, in response to Plaintiff's motion.

The rule that an action must be judged on the grounds actually given by the actor at the time, and not on rationalizations supplied afterward by others, is foundational. *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88, 95 (1943); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (courts "may not accept appellate counsel's *post hoc* rationalizations for agency action"). Plaintiff does not suggest that the Court sits as an agency. He observes that the Court will shortly be

asked to apply that rule to Defendant, and that the explanation now on the record for the Marshals' nonperformance is one the rule would not permit Defendant to offer. Plaintiff acknowledges that a federal court possesses authority to modify its own procedural orders when warranted by law and circumstances.

The question is not whether the Court possessed authority to grant additional time. It is whether additional time was lawfully granted, and what legal effect an administrative processing estimate may possess in the absence of such modification. Further, the estimate appeared in the Court's ruling without an identified declaration, filing, or other administrative record establishing its factual basis.

Plaintiff respectfully submits that a generalized estimate concerning the ordinary duration of service cannot independently establish whether the USMS complied with a particular judicial directive in a particular case.

Under 28 U.S.C. § 566(a) and (c), obedience to and execution of lawful federal judicial process are express statutory responsibilities of the USMS.

The Service is therefore subject to the lawful authority of this Court when carrying out the responsibilities assigned to it.

Ordinarily, a person or entity unable to comply with a judicial directive is expected to seek appropriate relief, explain the impediment, and obtain such modification as the Court determines justified.

Nor did the Court's authority to inquire ever depend on a filing by Plaintiff. A court's power to enforce its own orders is inherent and may be exercised on its own motion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Under Rule 4(c)(3) and 28 U.S.C. § 1915(d), the officers of the Court serve process for a plaintiff proceeding in forma pauperis; the directive in ECF No. 13 was the Court's own, addressed to its own officer, and the Court could have required a report of its execution at any time after October 5, 2026, whether or not any party asked. Plaintiff's notice of October 6, ECF No. 16, was therefore not a request that the Court acquire authority it lacked; it was a report that authority the Court had already exercised had not been carried out. The Court declined to act on it because "a notice is not a motion." ECF No. 19 at 3. Plaintiff does not revisit that disposition here. He observes only that the motions which followed — ECF No. 18, ECF No. 21, and this one — have each asked the Court to do what it was free to do without being asked, and that the form of the asking has now been corrected three times without the substance being reached. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se filings construed liberally).

The allocation of the burden of explanation is also settled in this Circuit, and it does not run the way the October 16 order ran it. Where a valid and unambiguous order has been entered and the record shows it has not been complied with, the burden shifts to the party that did not comply to come forward with evidence explaining why. *FTC v. Leshin, 618 F.3d 1221, 1232 (11th Cir. 2010)*; *see Georgia Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (civil contempt requires clear and convincing proof that the order was valid and lawful, clear and unambiguous, and that the alleged violator had the ability to comply; the inquiry concerns actual compliance, not subjective intent). Plaintiff does not seek a finding of contempt and has said so. He cites these authorities for a narrower point: each element they describe appears on the face of this record — an order entered under Rule 4(c)(3); a fourteen-day period, three named recipients, and a prescribed method; and a recipient "located in the same building as the USMS," ECF No. 13 at 4 n.3 — and the burden of explaining what followed belongs, under this Circuit's law, to the officer who did not perform. The October 16 order did not place that burden on the officer. It discharged the burden for him, with an estimate the officer never offered — and in doing so it returned the burden to Plaintiff, who must now establish nonperformance without the officer's records, against a presumption the officer

never invoked, in order to obtain the explanation the law says the officer owes unprompted. The denial of the requested accounting therefore did not merely decline to exercise a discretionary authority; it foreclosed the only mechanism by which the burden of explanation could be shifted to the officer who holds the facts. The burden did not disappear. It changed hands, from the party who holds the facts to the party who does not. Plaintiff asks only that it be placed where the law places it, so that whatever explanation exists may be given by the party who has it.

Plaintiff respectfully requests clarification concerning the apparent disparity between that ordinary expectation of accountability and the treatment afforded the unresolved service obligation in this action.

Specifically, Plaintiff asks:

> *Where an express judicial directive remains unmodified, what legal authority permits an unsupported estimate of agency processing time to substitute, in practical effect, for compliance with that directive, without requiring the responsible agency to account for its nonperformance?*

Plaintiff does not request a finding of contempt or presume intentional misconduct by the USMS.

He requests that the ordinary mechanisms of judicial accountability be applied: an ascertainable account of compliance, identification of any impediment, and appropriate directions for completing the outstanding service obligation.

This request is made in deference to the authority vested in this United States District Court and in furtherance of the principle that lawful judicial directives retain their force unless modified through an appropriate exercise of judicial authority.

## IV. Third Question: The standard by which the absence of any record of performance was found not to establish nonperformance

Plaintiff raises this question with particular care, because it concerns the reasoning of the October 16 order rather than its result, and because it bears directly on the question this action was brought to present.

The October 16 order concluded that "[t]he absence of a return of service on the docket does not establish that service has not been attempted or completed." ECF No. 20 at 2. Stated as a rule, that sentence holds that an officer of the United States, directed to perform an act by a date, is to be presumed to have performed it — or to be performing it — in the absence of any record either way. That is the presumption of regularity: the presumption that public officers have properly discharged their official duties, applied in the absence of clear evidence to the contrary.

One further fact about how the presumption came to be applied should be stated. It was not invoked by the party it benefited. The United States Marshals Service has filed nothing in this case and has asserted nothing about its own performance. Defendant has not appeared. The presumption of regular performance was supplied by the Court on the officer's behalf, in response to a motion from the only participant who had spoken to the question, and it was sustained on review over that participant's specific objection. ECF Nos. 20, 22.

Plaintiff does not dispute that the presumption exists or that it has a proper place. He observes that it is a presumption, and that a presumption is by definition rebuttable by evidence of irregularity. The question is what evidence suffices.

Plaintiff adds a distinction that the October 16 order does not draw. The presumption of regularity — *omnia praesumuntur rite et sollemniter esse acta* — concerns the manner in which an official act was performed. Where the record shows that an officer acted, the law presumes that the act was done rightly, and the burden falls on the party challenging it to show otherwise. The presumption cannot, without an additional factual basis, establish that the act occurred in the first place. The Court did not presume the regularity of an established act. It presumed the future occurrence of an unperformed or unverified act, notwithstanding the expiration of a

date-certain judicial directive. An expectation that the United States Marshals Service ordinarily completes service within thirty to forty-five days is neither evidence that service occurred nor a finding that the operative deadline was modified. The question is not whether service might eventually occur, but whether compliance with the Court's existing order was established when the Court declined to require an accounting.

The order of operations matters. A court may fairly presume, of an officer shown to have acted, that the documentation is in transit — that the act has likely occurred and its proof has not yet arrived. That is a presumption about a completed act, and it is the presumption the maxim describes. What a court may not do, under the name of the same presumption, is reason that the act has likely not yet been completed but surely will be in some future period. That is not a presumption; it is a forecast, and it lies well beyond the scope of *omnia praesumuntur*. The October 16 order's own words place it in the second category: fourteen days to mail, "additional time … for the documents to travel to the recipient," a return "to be mailed back." ECF No. 20 at 2. The order describes a process it expects to be underway, not an act it presumes to have been done.

Nor does the record permit the October 16 reasoning to be understood as a determination that the status of service was simply unknown. One day earlier, the Court had found — as the stated ground for striking Plaintiff's exhibits — that "[s]ervice on Defendant has not been completed." ECF No. 19 at 2. That finding was made on the same docket, on the same absence of any return, by the same Court. It was not qualified, and it was acted upon. The record therefore forecloses the reading that performance was regarded as undetermined on October 16; it had been determined, in writing, on October 15. Any justification offered for declining to require an accounting must comport with that finding, because the finding is the record, and the record is what the Court is bound by in the same way Plaintiff is.

The presumption is, in any event, "an analytic tool, not an excuse to rubberstamp any and all executive action as lawful absent clear evidence to the contrary." *Conley v. United States*, 5 F.4th 781, 791 (7th Cir. 2021). It holds only in the absence of clear evidence of irregularity. A silent docket past a court-ordered deadline; no return and no filing of any kind by the officer directed to act; and two orders of this Court describing the same absence in irreconcilable terms — these are such evidence. When it appears, the burden returns to the officer to account for his performance. Applying the presumption on such a record converts an evidentiary

rule into a shield against accountability: it places the entire temporal burden of delay on the party seeking enforcement while insulating the non-performing officer from supplying any factual record at all.

The record on which the presumption was applied here consists of the following. A written directive with a date certain. ECF No. 13 ¶ 4. The passage of that date without performance. No return, executed or unexecuted. No status report. No request for additional time. No filing of any kind by the officer directed to act. And, as of the date of this Motion, the passage of the full outer period the Court itself estimated that performance ordinarily requires, likewise without any record of performance.

Plaintiff respectfully submits that this is not an absence of evidence. It is evidence of irregularity, in the ordinary meaning of that word: a directed act, a date, and nothing on the record to show that the act occurred. If that showing does not rebut the presumption sufficiently to require the officer to account for himself, it is difficult to identify what showing, short of the officer's own confession, would.

The question matters beyond this motion. The amended complaint challenges a decision of the Board for Correction of Naval Records on the ground that the record underlying it is demonstrably irregular, and that the presumption of regularity cannot be sustained on such a record. The Defendant, upon appearing, will rely on that

presumption. The Court will have to decide what showing of irregularity suffices to displace it. The October 16 order applied the same presumption, to a different federal officer, on a record whose irregularity is apparent from the docket itself, and found it sufficient to deny any inquiry. Plaintiff does not suggest that the Court intended to decide the merits of his claim in an order about service. He observes that the reasoning is the same reasoning — a presumption about the manner of an act used to supply the fact of it — and that he is entitled to know the standard before it is applied to him a second time.

Plaintiff adds, for completeness of the record, that the pattern described in this Section is not an observation made for the first time in this Motion. He described the mechanism — procedural form applied to the litigant who cannot pay, while the non-performance of the institution on which he depends goes unexamined — in published work that predates this case: Osei Harper, *The Paradox of the Judicial Ouroboros: A Citizen's Observation of the Failure of the Rule of Law* (Oct. 23, 2025), https://raakaar.substack.com/p/the-paradox-of-the-judicial-ouroboros; and, before the September 21 service order, in *The Cases No One Counts* (2026), https://doi.org/10.5281/zenodo.22544025. The sequence reflected in ECF Nos. 16 through 22 comports with that description. Plaintiff has since analyzed this

sequence, by docket entry and in the terms used in this Section, in *The Irregularity of Regularity: Testing the Paradox of the Presumption of Regularity* (Nov. 4, 2026), https://doi.org/10.5281/zenodo.23826928, which identifies three shifts by which a presumption of regularity ceases to be one — of proposition, from the manner of an act to its occurrence; of time, from a past finding to a future forecast; and of institutional role, from reviewing a determination to supplying it — and proposes six questions a court applying the presumption to contested governmental performance should be able to answer from the record: the act presumed regular; the proposition the presumption is used to establish; the temporal direction of the inference; the contrary evidence and the standard for weighing it; whether the responsible actor, or the court, authored the explanation being sustained; and the legal consequence of reliance. *Id.* Part X. Plaintiff cites these works not as authority, which they are not, but as a contemporaneous record that the question presented in this Section was identified before this Court was asked it, and that the October 16 order can be tested against each of the six questions on the face of this docket. Plaintiff respectfully submits that each of the six is answerable from the record of this case, and asks only that the Court answer them.

Plaintiff therefore respectfully asks:

> *By what standard did the Court determine that a written directive with a date certain, the passage of that date, and the absence of any record of performance by the officer directed to act did not establish nonperformance sufficiently to require an accounting — and what showing of irregularity would suffice to rebut the presumption of regular performance if this one does not?*

Plaintiff asks this not rhetorically but because the answer governs the remainder of this case. If the standard is that the presumption yields only to an affirmative showing of misconduct, Plaintiff should know that now, because it is the standard he will have to meet on the merits. If the standard is something less, Plaintiff respectfully submits that the record of service in this case meets it, and that the accounting he has requested should be ordered.

## V. Fourth Question: The procedural remedy that remains available to Plaintiff if the Court declines both enforcement and Rule 4(m) protection

Plaintiff respectfully seeks a determination of what additional procedural relief, if any, remains available to secure completion and documentation of service so that this action may proceed.

The preceding filings present a straightforward chronology.

Plaintiff satisfied the requirements within his control.

The Court assigned service to the USMS and established a fourteen-day period for compliance.

That period expired.

Plaintiff notified the Court.

Plaintiff subsequently requested a sworn accounting, judicial enforcement, a good-cause determination, and Rule 4(m) protection.

Those requests were denied.

Plaintiff pursued review under Rule 72(a), identifying specific factual and legal objections.

That review likewise resulted in denial. The objections were overruled on the ground that Plaintiff had not shown the October 16 order to be clearly erroneous or contrary to law; the order did not identify which of the five specific objections it had considered, did not resolve the outstanding service status, and did not address the discrepancies Plaintiff had identified. ECF No. 22.

The additional passage of time has not cured the deficiency.

Meanwhile, the underlying litigation remains unable to advance through the ordinary service-and-response sequence contemplated by Rules 4 and 12.

Plaintiff respectfully submits that the consequences of this delay are not distributed equally.

The agency charged with performing service controls the records necessary to determine what occurred. The Defendant may obtain actual notice of the litigation before the docket establishes the operative service dates. Plaintiff, however, cannot independently establish those dates or compel the agency to provide its records.

The absence of a timely return does not necessarily invalidate otherwise effective service under Rule 4(l)(3). Nevertheless, the continuing absence of an accounting prevents Plaintiff from reliably determining the status of the service obligation and evaluating the procedural deadlines arising from it.

More fundamentally, the progression of the underlying action has become dependent upon the unresolved conduct of an executive-branch agency whose statutory responsibility is to execute judicial process, not determine the Court's calendar.

The prejudice, therefore, does not reside in any single ruling, and Plaintiff does not ask the Court to weigh the rulings one at a time. It resides in the sequence. Despite every reasonable effort, using every instrument available to a pro se litigant proceeding in forma pauperis, Plaintiff has tried to reconcile the inconsistencies and incongruities the record now reflects. The underlying question — whether the Court's order of September 21 has been carried out — has yet to be answered by anyone with knowledge of the answer, and the clock continues to run. Service is a

gateway act. It is the act that opens the doors of the litigation process, and until the Court's own officer completes it, nothing else in this case can begin: Defendant cannot answer, the Court has held that Plaintiff's evidence is premature, ECF No. 19 at 2, and the merits cannot be reached. Without its completion, Plaintiff stands outside the gates of the Court, holding a case the Court has accepted, waiting on an officer the Court commands, while the time the rules allot to him is spent.

Plaintiff therefore respectfully asks:

> *When an indigent plaintiff has fulfilled every service-related requirement within his control, and repeated requests for enforcement and protective relief have been denied, what effective procedural means remains available to secure performance of an outstanding judicial directive without requiring the plaintiff to initiate additional litigation?*

Plaintiff does not presume that this Court lacks the authority to resolve the deficiency.

To the contrary, Plaintiff respectfully requests that the Court exercise such authority as it deems appropriate to secure prompt completion and documentation of service, including requiring an accounting from the USMS, establishing an enforceable compliance schedule, or granting other necessary procedural relief.

Should the Court determine that further intervention is unwarranted or unavailable, Plaintiff respectfully requests clarification of the legal and procedural basis for that determination.

Such clarification would enable Plaintiff to ascertain whether the ordinary remedies reasonably available within this proceeding have been exhausted.

In the continued absence of effective relief, Plaintiff anticipates pursuing the next available judicial mechanism, including an extraordinary mandamus proceeding under the appropriate jurisdictional authority to secure performance of the service obligations imposed by Rule 4(c)(3) and 28 U.S.C. § 566.

Plaintiff identifies that possibility as the next procedural avenue potentially necessitated by the exhaustion of ordinary remedies, not as a challenge to the Court's authority.

Indeed, the purpose of the present Motion is to afford the Court an opportunity to secure compliance with its own directive, preserve the orderly administration of its calendar, and protect an indigent litigant from further prejudice attributable to the nonperformance of an agency entrusted with executing judicial process.

## VI. Request for Expedited Consideration

Plaintiff respectfully requests that the Court consider this Motion on an expedited basis. The ninety-day period under Rule 4(m) ends on November 12, 2026 — seven calendar days, and five business days, after this filing. The relief requested in Part II is prospective by nature. It cannot be granted after the period has run without converting a protective request into a retrospective one, which is the very conversion the October 16 order effected and which this Motion asks the Court to correct. The accounting requested in Part III can be ordered, and performed, within days; the USMS holds every record it would need.

Plaintiff therefore asks that the Court rule on this Motion before November 12, 2026, or, if it cannot do so, that it enter an interim order extending the period under Rule 4(m) pending its ruling, so that the question presented is not mooted by the passage of the very date it concerns. The terminal date is the Court's to extend and no one else's; Plaintiff can do nothing further to protect it but ask.

## VII. Conclusion and Request for Relief

Plaintiff respectfully submits that this Motion presents four questions that remain unresolved despite repeated efforts to obtain relief:

> *Why has prospective Rule 4(m) protection been denied where the delay threatening timely service is attributable to an agency rather than to Plaintiff?*
>
> *What legal basis supports continued reliance upon an unsubstantiated processing estimate without an express modification of the Court's original service directive or an accounting from the agency responsible for compliance?*
>
> *By what standard was the absence of any record of performance by the officer directed to act found not to establish nonperformance, and what showing of irregularity would suffice to rebut the presumption of regular performance if this one does not?*
>
> *What effective procedural remedy remains available to Plaintiff when the Court has declined both enforcement of its service directive and protection against the consequences of continued agency nonperformance?*

**WHEREFORE,** Plaintiff respectfully requests that the Court address these questions and grant such relief as it deems just and appropriate, including: (1) an appropriate extension of the service period under Rule 4(m); (2) an accounting from the USMS concerning the execution of the September 21 directive; (3) prompt completion and filing of executed or unexecuted service returns, as applicable; (4) such further compliance measures as the Court deems necessary to preserve the effectiveness of its judicial process; (5) identification of the standard by which the Court determined that the absence of any record of performance did not establish nonperformance, and of the showing of irregularity that would suffice to rebut the

presumption of regular performance; (6) clarification of the remaining available remedies should the Court decline additional intervention; and (7) consideration of this Motion on an expedited basis, with a ruling before November 12, 2026, or an interim extension of the Rule 4(m) period pending the Court's ruling.

Plaintiff acknowledges the Court's prior determinations and respectfully submits that the issues presented are not rendered moot merely because his previous requests were denied.

The underlying service obligation persists. The passage of additional time has increased the procedural consequences of its noncompletion. And the legal questions concerning enforcement, protection, and available relief remain unanswered.

One request stands apart from the others in urgency, and Plaintiff states it again so that it is not lost among them. If the Court cannot rule on this Motion before November 12, 2026, Plaintiff asks that it enter an interim order extending the Rule 4(m) period pending its ruling. That order costs nothing, decides nothing, and preserves everything; without it, the question this Motion presents may be mooted by the arrival of the date it concerns.

Plaintiff seeks neither preferential treatment nor exemption from the obligations imposed upon him. He seeks the application of governing law to the duties already

assigned, the enforcement of judicial process already ordered, and the protection necessary to ensure that administrative nonperformance does not become a barrier to adjudication.

Plaintiff brings this Motion respectfully, in deference to the lawful authority of this Court, in furtherance of the orderly administration of justice, and with the sincere objective of resolving the outstanding procedural deficiency without unnecessary additional proceedings.

Respectfully submitted,

Dated: November 5, 2026

______________________________

Osei A. Harper, Plaintiff, pro se
613 E. 9th Avenue
Havana, Florida 32333
oseis572@gmail.com
347.804.1232

**CERTIFICATE OF CONFERENCE UNDER LOCAL RULE 7.1(B)–(C)**

No conference was possible. Defendant has not been served and has not appeared, and the United States Marshals Service is not a party. Plaintiff remains ready to confer with counsel for Defendant on this and any other matter promptly upon

appearance; the inability to do so is a consequence of the delay in service that is the subject of this Motion.

**CERTIFICATE OF WORD COUNT UNDER LOCAL RULE 7.1(F)**

This Motion and incorporated memorandum, from the caption through the prayer for relief, contain 6,692 words, as counted by the word-processing software used to prepare it, which is fewer than the 8,000 words permitted by Local Rule 7.1(F).

**CERTIFICATE OF SERVICE**

No party has appeared, and there is no one to be served under Rule 5(a). Plaintiff has filed this Motion with the Clerk of Court by hand delivery on the date shown above. Should the Court wish the United States Marshals Service to receive a copy, Plaintiff respectfully requests that the Clerk provide one.

______________________________
Osei A. Harper